632 A.2d 596

**Richard L. BENNETT, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HARTZ MOUNTAIN CORPORATION and Fireman's Fund Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Oct. 21, 1992.

Decided Sept. 27, 1993.

548

Edward H. Water, for petitioner.

Gary Scolos, for respondents.

Before CRAIG, President Judge, and DOYLE, COLINS, McGINLEY, SMITH, PELLEGRINI and FRIEDMAN, JJ.

DOYLE, Judge.

Richard L. Bennett (Claimant) appeals an order of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of the referee granting the modification petition of Hartz Mountain Corporation (Employer) that re-

duced Claimant's benefits under the Pennsylvania Workmen's Compensation Act (Act).[1]

The facts underlying this appeal are not in dispute. Claimant worked for Employer as a warehouseman when he injured his back in the course of employment on September 20, 1983. Pursuant to a notice of compensation payable, Employer commenced payment of temporary total disability benefits to Claimant. Employer then initiated vocational rehabilitation efforts on behalf of Claimant and referred Claimant to numerous potential job openings within Claimant's medical restrictions.

Following one of Employer's referrals, on October 21, 1988, Claimant applied for a permanent, full-time (*i.e.,* 40 hours per week) light-duty job at Sunn Corporation's Radon Division approved for Claimant by Employer's doctor. When offered the job on this date, Claimant responded that he was not sure when he could start because he would have to discuss it with his doctor first. Claimant again returned to Sunn Corporation on November 7, 1988 and was asked if he would like to work there. Claimant did not accept the job but instead responded by handing the interviewer three reports from his doctor stating that he was totally disabled. Subsequently, the Radon Division was sold, meaning that the light-duty job offered to Claimant would not have been available after January 1, 1989.

On February 24, 1989, Employer filed a modification petition alleging that Claimant had partially recovered from his work-related injury and had failed to accept a light-duty job within Claimant's medical restrictions offered him at Sunn Corporation. Claimant contested the petition, arguing that he was not able to perform the offered job and that, even if the job was found to be within his physical capabilities, his benefits should only be modified for the period November 7, 1988 to December 31, 1988, the period of time that the job was actually available.

The referee found that Claimant's condition had in fact improved and that Claimant had failed to exercise good faith

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

in response to the light-duty position offered him at Sunn Corporation. Accordingly, the referee reduced Claimant's benefits from total to partial, based upon the wages he would have received had he accepted the proffered job. The referee rejected Claimant's argument concerning the availability of the job and concluded that because Claimant's "loss" of the position had been his own fault, Claimant was not entitled to a "reinstatement" of total disability benefits as of January 1, 1989. Claimant appealed to the Board, which affirmed, and appeal to this Court followed.[2]

■ The single issue presented to this Court is one of first impression: Where a claimant on temporary total disability is offered a light-duty position within his medical limitations, which is thought to be *permanent* when offered, but fails to pursue the position in good faith, and where the offered position is later eliminated for economic reasons, is the claimant entitled to a resumption of total disability benefits absent a showing by employer of another available job?

The employer's burden of showing job availability as a prerequisite to obtaining a suspension or modification of benefits was firmly established in *Barrett v. Otis Elevator Co.*, 431 Pa. 446, 246 A.2d 668 (1968). This requirement was further explained by our Supreme Court in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), where the Court determined that an employer's burden would be satisfied only where the employer showed that work within the claimant's capabilities was actually available and was referred to the claimant. At the same time, however, the Court imposed a duty on claimants to make a good faith effort to pursue job referrals and warned that benefits could be modified absent such good faith efforts.

2. Where both parties have presented evidence, our scope of review is limited to a determination of whether constitutional rights have been violated, errors of law have been committed or whether all necessary findings of fact are supported by substantial evidence. *Czap v. Workmen's Compensation Appeal Board (Gunton Corp.)*, 137 Pa.Commonwealth Ct. 612, 587 A.2d 49, *petition for allowance of appeal denied*, 527 Pa. 654, 593 A.2d 425 (1991).

Claimant is not contesting here the fact that Employer established an available job for the period November 7, 1988 to January 1, 1989 or that he failed to pursue this job referral in good faith.[3] Instead, Claimant argues simply that because the job which was once available subsequently became unavailable, he therefore occupies the same position as a claimant who would have accepted the job and then later had been laid off; *i.e.*, his benefits should be modified upward to total disability until Employer can again show an actually available job. *See Smith v. Workmen's Compensation Appeal Board (Futura Industries)*, 80 Pa.Commonwealth Ct. 508, 471 A.2d 1304 (1984); *Busche v. Workmen's Compensation Appeal Board (Townsend and Bottum, Inc.)*, 77 Pa.Commonwealth Ct. 469, 466 A.2d 278 (1983).

While Claimant attempts to analogize his situation to that of a disabled employee who has accepted a modified or light-duty job and then lost that position, the two situations are not exactly the same. In the case of an employee who has accepted and performed the light-duty job, the focus of the inquiry is on the employee's reason for losing the job, *i.e.*, whether the loss of earnings was through "no fault of his own." *See Smith*; *Woodard v. Workmen's Compensation Appeal Board*, 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980). Where, however, the employee has not even accepted the proffered light-duty job at the outset, this same principle does not apply because the employee, being at that time unemployed as a result of his rejection of acceptable employment, has no earnings to lose. In this situation, the inquiry is to determine whether the employee acted in "good faith" in

**3.** The referee's finding on Claimant's good faith effort to obtain employment was as follows:

> 14. The Referee did not find the claimant's testimony of a good faith effort in obtaining employment at Sunn Corporation to be credible. At the November 7, 1988 interview, when he was asked if he wanted to work there, the claimant simply handed the interviewer the three doctors' reports (hereinabove referred to) and answered 'I think my doctor has already answered that for you.' If the claimant's enthusiasm for obtaining any of the other seventy-two jobs to which he was referred was the same as it was at Sunn Corporation, it is understandable why he did not receive employment. The claimant did not want to be employed.

refusing the job in the first instance. Thus, in the instant case, the proper focus is on Claimant's admitted bad faith; the fact that his earnings would later be nonexistent is irrelevant. In short, we will look to the situation at the beginning of the proffered *permanent* employment, not at the end of that employment which only later became *temporary*.

Our decision in *Korol v. Workmen's Compensation Appeal Board (Sewickley Country Inn)*, 150 Pa.Commonwealth Ct. 279, 615 A.2d 916 (1992), is instructive on the issue presented in the instant case. In *Korol*, we concluded that a claimant who once rejects a job in bad faith cannot later remedy her bad faith by obtaining a similar job on her own, "once it becomes evident that the employer no longer believes the claimant is acting in good faith to seek suitable alternative employment [which belief] becomes evident when the employer files a petition to suspend or modify benefits as a result of the claimant's failure to follow up on a job referral." *Id.* at 286, 615 A.2d at 919.

Also instructive is our decision in *Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick Inc.)*, 149 Pa.Commonwealth Ct. 362, 614 A.2d 779 (1992). In *Spinabelli*, the employer obtained a modification of benefits after the claimant refused an available light-duty position with the employer. Approximately one month following the referee's decision granting the modification, the claimant filed a petition for reinstatement alleging that he had attempted to accept the previously offered light-duty work, but that the employer had informed him that, at that time, the job was no longer available.

The referee concluded that the employer must continue to provide available work and that the claimant was thus entitled to a reinstatement. On appeal, we reversed the referee:

> [w]here we have a finding that a claimant has failed to pursue jobs in good faith, we do not believe the employer has the responsibility of keeping a job open indefinitely, waiting for the claimant to decide when he wants to work. [Here] claimant's loss of earning power is not due to his

disability, but due to his lack of good faith in pursuing work made available to him which was within his physical limitations. In order to receive a reinstatement of total disability benefits, claimant must prove a change in his condition such that he could no longer perform the jobs previously offered to him.

*Id.* at 365, 614 A.2d at 780. Thus, the fact that the claimant acted in bad faith and once refused an available job was determinative of the issue and relieved the employer of any burden to show continuing availability.

In *Jayne v. Workmen's Compensation Appeal Board (King Fifth Wheel),* 137 Pa.Commonwealth Ct. 211, 585 A.2d 604 (1991), the employer offered the claimant a light-duty position which the claimant was required to accept by 7:00 a.m. on December 1, 1987. When the claimant did not call to accept the offer until 1:00 p.m., the employer informed claimant that the job was no longer available. The claimant was denied benefits and appealed arguing that employer had not made a good faith attempt to return him to productive employment. We concluded that the employer's offer had been in good faith and, by implication, that the claimant's failure to accept the position at the time it was offered was a bad faith rejection of an available job.

*Korol, Spinabelli,* and *Jayne* are illustrative of the purpose of the rule requiring that a claimant must respond to a job offer in good faith and also suggest something about the effect of a bad faith refusal. Claimant has argued that the good faith requirement of *Kachinski* was not intended as a punitive measure and that, accordingly, there is no reason to withhold his benefits when the job he refused subsequently became unavailable. In short, Claimant maintains that in his situation, Employer occupies the same position whether or not he accepts the referred job; that his employer is required to continue to show job availability.

In *Korol,* however, the fact that the claimant later secured a job on her own, thus placing her and the employer in the same positions they would have occupied had she accepted the

employer's job referral in the first place, did not cure her initial bad faith refusal. We concluded that the bad faith would become "fixed" and claimant would be bound by her actions. Similarly, in *Spinabelli,* the claimant's later attempt to secure the job which he had once refused did not reinstate the employer's burden to show job availability. Once the claimant had refused the job in bad faith, his conduct could not be excused by his subsequent action. *See also Jayne.*

Contrary to Claimant's assertions, *Korol, Spinabelli* and *Jayne* suggest that a claimant's bad faith refusal of suitable employment should result in a permanent modification, because otherwise, a claimant could cure her bad faith refusal at any time, no matter how far in the distant future, by returning at a later date and applying for the position previously offered, or by demonstrating that the employer moved the plant to a distant state, as in this case, and such employment is no longer available.

█ In the instant case, we conclude that Claimant's bad faith refusal of an offer of suitable work, which is permanent when offered, relieves the Employer's responsibility to continue to demonstrate job availability.

Other recent opinions of this Court are not contrary to this conclusion as argued by Claimant. In *St. Joe Container Co. v. Workmen's Compensation Appeal Board (Staroschuck),* 141 Pa.Commonwealth Ct. 672, 596 A.2d 1193 (1991), a claimant was offered a job within his medical capacity which was available for a period of only six months. We held that the claimant's refusal of the position entitled the employer to a modification to partial disability benefits for a period of six months only, *i.e.,* during the time which the job was available. The salient point to be drawn from this case is that the effect of the claimant's bad faith refusal was based upon, or limited to, the facts reasonably in Claimant's possession at the time he made his decision. In *St. Joe Container,* the claimant knew that the proffered work was only "temporary" and that his refusal to accept the job resulted only in the temporary reduction of his benefits. *See also Younkin v. Workmen's*

*Compensation Appeal Board (Bethlehem Mines Corp.),* —— Pa.Commonwealth Ct. ——, 631 A.2d 786 (1993).

In the instant case, Claimant was aware that a *permanent* position was available, and thus it is fair to expect that Claimant be prepared to forego benefits for an indefinite period.

In summary, we hold that where a claimant acts in bad faith in refusing suitable and available work, permanent at the time it is offered, the claimant's benefits are reduced for an indefinite period by the amount of earnings the job would have produced.[4] Where a claimant acts in bad faith in refusing a position which is only a temporary job when offered, benefits will be modified for a period equal to the length of time the job was actually available. The determination of the duration of the position, either temporary or permanent, is to be made at the time of the referral and is to be based upon the information available to the employer and claimant at the time of the referral.

In reaching this conclusion, we are not unmindful of Claimant's assertion that the Act is to be construed liberally in favor of claimants in accordance with its humanitarian purposes, *see Krawchuck v. Philadelphia Electric Co.,* 497 Pa. 115, 439 A.2d 627 (1981), and that Employer would be in no way prejudiced by a decision in Claimant's favor because such a decision would not render Employer permanently liable for payment of total disability benefits. We believe, however, that the *Kachinski* requirement of good faith on the claimant's part is designed to ensure a claimant's cooperation in his own employment rehabilitation efforts. In fact, the Supreme Court has noted that the entire workmen's compensation system is based on the mutual cooperation of the parties. *Kachinski.* It is eminently fair to require claimants who act in bad faith to live with the foreseeable consequences of their actions and a rule which would discourage bad faith on the part of claimants

---

**4.** A claimant could obtain an increase or reinstatement of benefits upon a showing that his/her physical disability had increased.

would further ensure the cooperation of efforts necessary to maintain the system.

Accordingly, the order of the Board is affirmed.

## ORDER

NOW, September 27, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

McGINLEY, Judge, dissenting.

I respectfully dissent. As the majority notes, this is a case of first impression. Although the question presented is difficult, I believe that the Act and our similar cases and *Kachinski* lead to a contrary result.

Initially, I disagree with the majority's characterization of Claimant's position as one of "admitted bad faith." The record shows that Claimant produced at the hearing a letter report from his doctor stating that he was unable to perform any of the referred jobs. The referee chose to accept the contrary testimony of Employer's medical witness. Admittedly this is fully within his authority.[1] Despite Claimant's medical evidence, and based on Claimant's conduct at the second interview (informing the prospective employer that Claimant's doctor had answered the question of whether Claimant wished to work there), the referee also made a specific finding that Claimant did not wish to be employed. Referee's Decision of February 27, 1990, Finding of Fact (F.F.) No. 14; Reproduced Record (R.R.) 142a. The Claimant's appeal to the Board expressly challenged this finding (noting that this record reflects over 70 referrals, and only Sunn Corporation reported that Claimant was not interested in the job), R.R. 144a. Claimant also asserted various errors

1. We have held that a claimant who refuses to pursue job referrals may be on dangerous ground if the referee, as factfinder, rejects the claimant's medical evidence attempting to rebut the employer's evidence of change in condition or the suitability of particular jobs. *Roadway Express, Inc. v. Workmen's Compensation Appeal Board (Lewis)*, 113 Pa.Commonwealth Ct. 230, 536 A.2d 870 (1988).

of law (all relating to a contention that a defendant employer is not entitled to modification after a referred job is no longer available); R.R. 145a. The Board's two-page opinion ignores the factual challenge and addresses only the legal question. On this appeal Claimant seeks review solely of the legal question raised by the termination of the offered job. As I see it, this is far from an "admission" of bad faith.

On the purely legal issue, the majority concludes that we should simply look to whether the employment at the outset is permanent in nature and ignore the fact that the employment here was actually temporary. This in turn is based on a conclusion that cases relating to the cessation of availability of modified jobs do not control where a claimant has no earnings to lose because of his initial bad-faith rejection of an offered job. Slip op. at 6.

Section 413 of the Act, 77 P.S. § 772, relating to modification, suspension or termination of notice of compensation payable, provides in part:

> [W]here compensation has been suspended because the employee's earnings are equal to or in excess of his wages prior to the injury ... payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

In ordinary circumstances when this clause is applicable, this court has held that when a partially disabled claimant who is working a modified job is fired for cause, compensation payments and the employer's duty to show the availability of suitable work do not resume because the loss of earnings is due to the firing, not to the work-related disability. *Woodward v. Workmen's Compensation Appeal Board*, 49 Pa.Commonwealth Ct. 558, 411 A.2d 890 (1980).

The present case, however, presents a different twist. Here Claimant proved that the position that he declined subsequently ceased, i.e., was no longer available to anyone, as of a date certain following his rejection of the job offer. If he had

accepted the job, he would have lost it without any fault on his part when the employer left town. Recalling that there is no dispute that Claimant is permanently partially disabled as a result of his original work-related injury, we must acknowledge that Claimant's situation after the offered job ceased to exist is within the literal language of Section 413. *Before* the job ceased to exist Claimant's "loss in earnings" as compared with his pre-injury situation was due to his unexcused failure to accept the offered job. *After* the offered job ceased to exist Claimant's loss of earnings resulted *solely* "from the disability due to that injury." If the job had continued to exist, Claimant's loss of earnings would be due to his rejection of the job offer. Here, it is undisputed that such was not the case.

I believe that the majority incorrectly fails to distinguish *Jayne, Spinabelli* and *Korol* on this basis. In each of those cases, nothing in the record suggested that if the claimant had timely accepted the position in question he could not have worked in that position indefinitely. Here Claimant succeeded in proving otherwise. The pivotal statement in *Spinabelli,* e.g., simply does not apply to this Claimant: "[Here] Claimant's loss of earning power is not due to his disability, but due to his lack of good faith in pursuing work made available to him which was within his physical limitations." 149 Pa.Commonwealth Ct. at 365, 614 A.2d 779. Claimant is not contending, as the majority asserts, that a claimant can cure a bad-faith rejection simply by applying at a time when that position is filled (*see Holmes v. Workmen's Compensation Appeal Board (Pisani Brothers, Inc.),* 86 Pa.Commonwealth Ct. 543, 485 A.2d 874 (1984)) or that the job offer has been withdrawn (*see Jayne v. Workmen's Compensation Appeal Board (King Fifth Wheel),* 137 Pa.Commonwealth Ct. 211, 585 A.2d 604 (1991)).

The majority does distinguish *St. Joe Container Co.* by describing it as a case where the claimant knew at the time he was offered the job in question that it was temporary. Again, I disagree. There the claimant was offered a permanent, specially created job. However, had he accepted it and worked in the position for more than six months certain

adverse consequences were sure to follow, including loss of thirty-six years of union seniority. He decided not to accept the job. Although the employer offered to let him "try it out" for six months, the claimant chose not to work the job temporarily or until the adverse consequences would take effect. The referee concluded that the claimant was subject to a permanent modification, but the Board concluded that the adverse consequences rendered the job legally "available" for only six months, and so approved only a limited period of modification. This court affirmed. The claimant did not know at the time he rejected the job that it would later be held to be "available" for only a limited period.

If Employer is not required to reassume the responsibility to show availability of suitable work, then a denial of benefits is actually being based on a theory outside the requirements of Section 413. The majority pursues such a theory by reference to the statement in *Kachinski* that the procedures specified there for return to work of partially disabled employees depend on the exercise of good faith by both parties. The majority essentially adopts Employer's position that this principle requires that bad-faith refusal of a job offer deserves to be punished, and the appropriate punishment is the termination of the employer's responsibility to show the availability of suitable work. Anything else is results in treating a bad-faith claimant the same as a good-faith claimant.

One point this analysis overlooks is that the two are *not* really treated the same. Under *Kachinski* a claimant who rejects a job offer is treated as if he had accepted the job. He is punished by the deduction in benefits equal to the wages that he would have earned had he accepted (but no more or less), resulting in a modification or a suspension. He has substantially reduced income as compared with a claimant who accepts a job offer. The Supreme Court expressly mandated this sanction when it established the return-to-work procedures. The Supreme Court did not contemplate or address the situation where the job is phased out or ceases to be available, but *Kachinski* does not require or imply that the claimant should be treated differently than if he had accepted

the job. I believe the result reached by our majority imposes a harsh and unwarranted penalty on this claimant and the others who find themselves in a similar situation.

In summary, I foresee no danger that bad-faith claimants will intentionally reject job offers with the hope that the job will cease to exist. Where a claimant proves the job is no longer available, I see no basis for requiring the further sanction of permanent modification.