638 A.2d 493

**Debbie BISSLAND, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BOYERTOWN AUTO BODY WORKS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 1994.

Decided March 7, 1994.

350

Stuart A. Leibowitz, for petitioner.

Wilbur C. Creveling, Jr., for respondent.

Before SMITH and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Debbie Bissland (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board), which affirmed the Referee's decision granting the petition of Boyertown Auto Body Works (Employer) to suspend compensation to Claimant as of June 21, 1989. This case presents the issue of whether workmen's compensation benefits were properly suspended when Claimant refused to pursue a job referral for which she was medically cleared, and then after this refusal, but prior to the Referee's decision that Claimant was capable of performing the job offered her, the job became unavailable because Employer's business closed. The following facts are of record:

On July 22, 1987, Claimant sustained a fracture of her tibia and fibula of her left leg while in the scope of her employment as a mail clerk/personnel assistant and errand runner. Pursuant to a Notice of Compensation Payable, Claimant received total disability benefits until she returned to work on September 8, 1987. She remained at work for six months until she again became totally disabled due to a condition diagnosed as reflex sympathetic dystrophy in her left leg, and which resulted from her previous injury.

Dr. Jan B. Wemple, a neurosurgeon, and Dr. Ellis F. Friedman, an orthopedic surgeon, examined Claimant on June 8 and June 15, 1989, respectively, and she was notified on June 21, 1989 that because of these medical exams she had been released to return to work in a job as inventory clerk, which Employer had made available for her. This job involved

sitting and compiling shop packets of papers in plastic folders and occasionally delivering a plastic packet weighing approximately two ounces to another building by walking or driving. Claimant never contacted Employer after receiving notice that the job was available.

Employer filed a Petition for Termination, Suspension or Modification pursuant to Section 413 of the Pennsylvania Workmen's Compensation Act (Act),[1] and Claimant answered denying that she had fully recovered from her work-related injury. Prior to the close of hearings in this case, evidence was admitted that on May 23, 1990, Employer closed down all of its business operations, and therefore the job was no longer available.

The Referee found that as of June 21, 1989, Claimant was medically cleared for a job as an inventory control clerk which was offered by Employer and which was within her vocational abilities. She also found that the testimony of Drs. Wemple and Friedman was credible, while that of Claimant's doctor, Dr. Schwartzman, was not. Consequently, the Referee concluded that Claimant's compensation should be suspended as of June 21, 1989, the date of the letter offering her employment, based on the availability of suitable employment.

■ Initially, we note our scope of review is limited to a determination of whether constitutional rights have been violated, whether an error law has been committed, or whether the referee's findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704. Where, as here, the Board makes no additional findings in its decision on appeal, the referee is the ultimate fact-finder, and we must accept the findings as conclusive if they are supported by substantial evidence. *Wells–Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.)*, 144 Pa.Commonwealth Ct. 382, 601 A.2d 879 (1992).

■ We also note that for the purposes of receiving workmen's compensation, "disability" means loss of earning power, and thus although a claimant may suffer a work-related

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772.

physical disability, it is only if that physical disability occasions a loss of earnings that a worker will be "disabled" under the meaning of the Act and will be entitled to receive compensation. *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Co.),* 118 Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988).

First, Claimant argues that because her benefits were suspended rather than terminated, and there exists the well-established presumption that a residual physical disability exists by virtue of an order to suspend, *Fells v. Workmen's Compensation Appeal Board (Caterpillar Tractor Co.),* 122 Pa.Commonwealth Ct. 399, 552 A.2d 334 (1988), the only way the Referee could properly order suspension of benefits is by showing that the earning power of the claimant is no longer affected by the physical disability, whether it arises from the employer offering suitable replacement employment or from the ability of the claimant to find other suitable employment. *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301 (1990). She therefore claims, citing to case law concerning reinstatement of benefits after a suspension, that because by the time the proceedings were concluded Employer could no longer offer suitable replacement employment, and she had not found suitable employment on her own, the Referee erred as a matter of law in suspending her compensation. *Id., Wells–Moore; Fells.* There are several problems with this argument.

It is settled law that when a claimant seeks to have a suspension of benefits lifted, the burden of proof on the *claimant* consists of proof that the reasons for the suspension no longer exist. More specifically, this means a claimant is required to show that the disability remains, and because of this disability, and through no fault of his or her own, a loss of earnings has reoccurred. Employers may rebut this proof of loss of earnings by establishing the availability of work which Claimant may perform. *Pieper; York City School District v. Workmen's Compensation Appeal Board (Peyser),* 136 Pa.Commonwealth Ct. 110, 582 A.2d 423 (1990).

Here, however, Claimant was not petitioning for the reinstatement of her benefits; she was receiving benefits. Instead, Employer petitioned to have Claimant's compensation terminated, suspended or modified. In this procedural posture, *Employer* has the burden of proof to establish: (1) that the medical evidence shows that Claimant's condition has changed, and (2) Employer has referred Claimant to jobs within the occupational category for which she has been given medical clearance. Then the burden shifts to the Claimant to prove that: (3) a good faith effort was made to follow up on the job referral(s), but, (4) they failed to result in a job. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).

The Referee determined that Employer had met its burden by proving that Claimant's medical condition had changed, and by offering Claimant a vocationally suitable job as inventory control clerk which was kept open for 45 days at the same salary as her pre-injury employment. The Referee also found that Claimant did not demonstrate good faith in following through on Employer's job referral, and having applied all four prongs of the *Kachinski* test for suspending compensation, the Referee determined that Claimant's benefits should be suspended.[2]

Claimant can not plausibly argue that because the business later closed she was therefore not offered suitable job referrals, and Employer failed to meet the second prong of the

2. Employer argues that even though the Referee suspended, rather than terminated, Claimant's compensation, it can not be presumed that Claimant still remained disabled. This argument rests on the Referee's finding which specifically credited Employer's doctors who testified that Claimant had fully recovered from her injury. However, the Referee concluded that Claimant's compensation should be suspended, "based on the availability of the job as an inventory control clerk," not based on her complete recovery. (R.Vol. II, 323a.) Although both of Employer's doctors agreed she had recovered from her injury (R. 15a–17a, 149a, 157a,) they also noted that she had certain physical limitations and recommended certain work restrictions. (R. 79a, 96a, 100a, 177a–178a.) With such contradictory testimony and inconsistent factual findings, we can not say the Referee found that Claimant had completely recovered and merely erred in calling the modification of her compensation a suspension rather than a termination.

*Kachinski* test. Employer left the job offer open for forty-five (45) days, a reasonable amount of time, and the Referee found that Claimant did not make a good faith effort to follow up on the offer. Moreover, as a logical consequence of this argument, an employer would have to hold open such an offer of suitable employment indefinitely, until such time as a claimant decided to follow it up, and would never be able to petition for a modification of a claimant's benefits for a failure to make a good faith effort to find suitable employment. This is plainly unreasonable.

█ Even if we were to find that the burden of proof for reinstatement of benefits were applicable here, Claimant has not met that burden because she can not show that the reasons for the suspension of benefits no longer exist. *Andersen v. Workmen's Compensation Appeal Board (National Forge Co.)*, 113 Pa.Commonwealth Ct. 601, 537 A.2d 971 (1988). Claimant's compensation was suspended because of her failure to take a job offered to her by her former employer, not because she took a job which was later eliminated. *M & D Auto Body v. Workmen's Compensation Appeal Board (Pallott)*, 143 Pa.Commonwealth Ct. 346, 599 A.2d 1016 (1991). *Hendry v. Workmen's Compensation Appeal Board (Miller & Norford, Inc.)*, 133 Pa.Commonwealth Ct. 28, 577 A.2d 933 (1990). Although the job was later eliminated by business failure, she had never accepted the job offer which the Referee determined was medically suitable, within her vocational abilities, and at her pre-injury wages. Therefore, the reason for her suspension, failure to follow up on suitable job referrals, continued to exist.

In *Bennett v. Workmen's Compensation Appeal Board (Hartz Mountain)*, 158 Pa.Commonwealth Ct. 547, 632 A.2d 596 (1993), the claimant followed up on his employer's numerous referrals, but when he was offered a permanent, light-duty job at a lower wage than his pre-injury job, he did not accept the job but instead gave the interviewer three reports stating he was totally disabled. Three months later the light-duty job was eliminated for economic reasons. Accordingly, the referee reduced the claimant's benefits from total to partial, based

upon the wages he would have received had he accepted the proffered job. The claimant argued that he was entitled to a reinstatement of total disability benefits as of the time the job was eliminated. The referee rejected this argument and this court affirmed finding that when a claimant's loss in earnings was not due to his disability, but to his failure to exercise good faith in response to the offer of a medically suitable job, permanent at the time it is offered, the claimant's benefits are reduced for an indefinite period by the amount of earnings the job would have produced. Here, Claimant, by her own admission, made no effort to follow up on the job offer, and therefore like the claimant in *Bennett*, her loss in earnings was not due to her disability, but to her failure to meet the third prong of the *Kachinski* test, failure to make a good faith effort to follow up on job referrals. Thus, the subsequent elimination of the proffered job for business reasons does not result in the reinstatement of benefits.

Claimant next argues that proper medical clearance was not obtained by the Employer and communicated to her prior to Employer's job referral. Thus, she claims, Employer did not meet the second prong of the *Kachinski* test which states, "the employer must then produce evidence of a referral (or referrals) to a then-open job (or jobs) which fits in the occupational category for which the claimant has been given medical clearance, *e.g.* light work, sedentary work, etc." *Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

Claimant states that prior to June 21, 1989, the date she was sent notice of a prospective job, no physician had reviewed the job description and given medical clearance, and the job had not been reviewed by the vocational rehabilitation counselor, Jose Castro. Moreover, she argues that defense doctors did not formally approve the job at issue until June 29, 1989 and July 5, 1989, when the job analysis form, used to approve such jobs, was signed by the doctors, and there was no evidence that this clearance was communicated to Claimant. She also claims that there were further irregularities when the job description was modified to exclude the delivery work and Claimant was never notified of the modification until

after the notice of job availability had been sent to Claimant. Thus, Claimant argues that the Board lacked substantial evidence to support the conclusion that Employer had met its burden in proving that work was available to Claimant within her physical and vocational abilities and that her medical clearance had been communicated to her. We find no merit to this argument.

Although it is not necessary to obtain medical clearance for each job referral, *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Commonwealth Ct. 479, 568 A.2d 981 (1989), we have held that where a doctor has approved a category of jobs suitable for a claimant, the employer must produce evidence that the claimant was cognizant of her medical clearance. *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa.Commonwealth Ct. 75, 591 A.2d 762 (1991).

Here, Employer actually secured approval of the specific job from two physicians who testified that the job, as described, was well within Claimant's capabilities. Claimant was examined by the two physicians just a few days before the date the job was offered to her, and in fact, the job offer letter, which detailed the duties which she would be required to perform stated, "You have undergone independent medical examinations and as a result have been released to return to work." (R. 4a.) The fact that the formal releases were signed later, does not preclude more informal discussions between the doctors and the Employer about the results of the examination and Claimant's job capabilities. Moreover, although Mr. Castro did not see the employment site until after the letter was sent to Claimant nor observe any individuals performing the job of inventory control clerk, because such job was not yet in existence and the individual tasks were performed by several different people, the job as described in the letter, was based on a verbal job description given to Mr. Castro by the Employer. The job fell into the light-duty category, and Claimant had been cleared for medium duty.

Although it was irregular to modify the job description without informing Claimant, we hold this was harmless

error because Claimant, by her own admission, made no effort to follow up on the job offer, and the modification was therefore not communicated to her. We hold that there was substantial evidence to support the finding that Employer had met its burden in proving that medical clearance had been obtained and that Claimant was cognizant of this fact.

Finally, Claimant argues that there was not substantial evidence to support the Referee's finding that Claimant's medical expert, Dr. Schwartzman, was not credible. Substantial evidence has been defined as such relevant evidence as a reasonable person might accept as adequate to support the conclusion. *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990).

Here, Dr. Schwartzman's conclusion that Claimant was still suffering from several disabilities related to a work-related injury was based on an medical examination which had taken place in December, 1989, well before the examinations performed by Drs. Wemple and Friedman, who concluded that Claimant was able to perform the duties of the offered employment. The Referee compared the medical testimony and found the testimony of Dr. Schwartzman was not credible, while the testimony of Dr. Wemple and Dr. Friedman was specifically found to be credible. A referee may accept or reject any medical witness' testimony in whole or in part, *Kraemer v. Workmen's Compensation Appeal Board (Perkiomen Valley School District)*, 82 Pa.Commonwealth Ct. 469, 474 A.2d 1236 (1984), and we are satisfied that the record contains substantial competent evidence to support the Referee's credibility findings.

Accordingly, we affirm the order of the Board denying Claimant's appeal and affirming the decision of the Referee.

## *ORDER*

AND NOW, this 7th day of March, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed.

FRIEDMAN, Judge, dissenting.

Because I am not convinced that Employer satisfied the second prong of the test set forth in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) with regard to medical clearance, I respectfully dissent.

On June 21, 1989, Employer sent Claimant notice of a prospective job in a letter detailing the job duties and stating that she had "been released to go back to work." However, at that time neither physician had reviewed the job description and given medical clearance for that position. Indeed, the doctors did not formally approve the job at issue until June 29, 1989 and July 5, 1989, approval which was never communicated to Claimant. The majority contends that "the fact that the formal releases were signed later, does not preclude more informal discussions between the doctors and the Employer about the results of the examination and Claimant's job capabilities." (Majority opinion at 358.) Of course this is true; however, because the Claimant was not privy to these informal discussions and was not informed about the doctors' formal job approval, I do not believe that Employer satisfied its burden of showing that Claimant's medical clearance was communicated to her. Thus, I cannot agree with the majority "that there was substantial evidence to support the finding that Employer had met its burden in proving that medical clearance had been obtained *and that Claimant was cognizant of this fact.*" (Majority opinion at 358.) (Emphasis added.)

A claimant must be apprised of medical clearance so that he or she may faithfully pursue any appropriate job referrals. *Lukens, Inc. v. Workmen's Compensation Appeal Board (Williams)*, 130 Pa.Commonwealth Ct. 479, 568 A.2d 981 (1989). Because I do not believe that Claimant was properly apprised of that category of positions for which she had medical clearance, I would hold that Employer had failed to satisfy the second prong of *Kachinski* and reverse.[1]

---

1. For this same reason, I must also disagree with the majority that it was harmless error for Employer to modify the job description without informing Claimant. The majority justified this position because of

Claimant's failure to follow up on the June 21, 1989 job offer; however, as indicated, I do not believe Employer proved that Claimant was aware of her clearance to perform this job, awareness which would have required her to pursue the referral in good faith. Clearly, the modified job differed from the one actually offered Claimant in that it further reduced her job requirements; however, Claimant was unaware that this modified job existed. In *Lukens*, we referred to the issue of whether a claimant knew of a possible job opening as critical, stating that without that vital information, the claimant could not be expected to pursue the position. I believe that the omission of "vital" information can never be deemed harmless error.