**PA. LIQUOR CONTROL BOARD, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (LARDIN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 15, 1997.

Decided Feb. 20, 1998.

James B. Hudzik, Pittsburgh, for petitioner.

Amiel B. Caramanna, Jr., Pittsburgh, for respondent.

Before DOYLE and McGINLEY, JJ., and LORD, Senior Judge.

DOYLE, Judge.

The Pennsylvania Liquor Control Board (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) which affirmed an order of a Workers' Compensation Judge (WCJ) granting total and partial disability benefits to Raymond Lardin (Claimant) for varying periods of time

after he was laid off from a temporary light-duty position with another employer.

On December 30, 1987, Claimant, while working as an Assistant Manager for Employer, sustained a work-related lower back injury (lumbosacral strain) while lifting boxes of champagne.[1] Claimant attempted to return to work for one month in 1988 and for approximately two months in 1990, but was unable to continue working due to his injury. Pursuant to a Supplemental Agreement filed and executed between the parties on July 18, 1990, Claimant received partial disability benefits for the period of June 4, 1990, through August 17, 1990, in the amount of $140.92 per week and total disability benefits beginning on August 18, 1990, at the rate of $274.25 per week.

Beginning on September 24, 1992, Claimant began working for Solar Testing Laboratories (Solar) as a "batch plant inspector." This position was light-duty in nature and required no heavy lifting or physical strain. However, this position was not permanent but was temporary and of a seasonal nature. Claimant continued working in this position until November 23, 1992, when he was laid off when the job ended for a combination of economic and weather-related reasons.[2] At that time, however, he remained incapable of returning to his time-of-injury job with Employer.

Prior to Claimant's employment at Solar, Employer had filed a termination petition on June 25, 1992, in which it alleged that Claimant was capable of returning to his pre-injury position without restrictions. Subsequently, by a decision and order dated October 6, 1993, a WCJ denied Employer's termination petition, but found that Employer was entitled to a suspension as of September 24, 1992, based on a written stipulation of facts in which the parties agreed that Claimant returned to work (Solar) without any loss of earnings.[3] The WCJ found this stipulation of facts to be "tantamount to a supplemental agreement providing for a suspension of compensation as of September 24, 1992." (WCJ's Decision, 10/6/93, at 3; Finding of Fact (F.F.) No. 10; Reproduced Record (R.R.) at 145a.)

The WCJ also made the following relevant findings of fact:

6. Dr. Bakkila is claimant's treating physician who has seen and treated him during the period from December 31, 1987, through November 6, 1992, for his back strain and whose opinions are entitled to more credibility and weight in this case than employer's medical witness.

7. Claimant's testimony that he has never been pain free, that he always has low-back pain, that the weather affects his condition, that he continues to take medication for his injury, that his sleep has continued to be adversely affected, that his lifting ability has significantly decreased, that he can't bend or squat as he used to is credible and found as fact.

8. Dr. Bakkila's testimony and reasonable inferences therefrom that claimant has not fully recovered, that he has a chronic pain condition, that at times he made objective findings of back spasms which would come and go, that such spasms were present in February and November, 1992, that he was limited in his ability to work, that he could do only light to medium work (occasional lifting of 20 to 50 pounds—no lifting of 50 or more pounds—no frequent bending or stooping) is credible and found as fact.

---

1. His job duties as an Assistant Manager included housecleaning, mopping, unloading cases of alcohol from trucks, repetitive lifting and bending, and stocking merchandise.

2. Claimant also worked three additional days between January 24, 1993, and January 30, 1993.

3. Specifically, the parties stipulated as follows:
   3. Claimant returned to work on September 24, 1992, at no loss of earnings. He worked from September 24, 1992, to November 23, 1992, for a total of 61 days (8 5/7 weeks), and his total earnings were $4,235.00 for an average weekly wage of $486.01.
   . . . .
   7. Claimant also worked 3 days from January 24 though January 30, 1993, for a total earnings of $291.50 and is entitled to a partial disability loss of earnings of $79.95 for the week.

(Stipulation of Facts, 7/8/93, at 1; R.R. at 140–41a.)

9. In addition, claimant tried to return to work for one month in 1988 and for about two months in 1990, but was unable to continue working because of his work related disability. . . .

10. Nevertheless, the parties entered into a written stipulation . . . whereby they agreed that claimant returned to work without a loss of earnings on September 24, 1992, among other matters. That stipulation was tantamount to a supplemental agreement providing for a suspension of compensation as of September 24, 1992.

11. That stipulation was also tantamount to the employer proving that other, suitable work was actually available to and within claimant's reach which he was capable of obtaining without loss of earnings from September 24, 1992.

12. The only evidence of record as to the reason that he worked to November 23, 1992, and for three days in January 1993, is claimant's testimony on pp. 8–9, and 22–23 [R.R. at 45a–46a, 59a–60a], which testimony is credible.

13. The logical inference made from this testimony is that he did not work steadily from November 23, 1992, because of economic or weather-related reasons and not because of his work-[related] injury. Hence, his loss of earnings is unrelated to his work-[related] injury disability.

14. Although the employer failed to sustain its burden of proof for a termination of benefits as of March 27, 1992, it did sustain its burden of establishing work availability without a loss of earnings as of September 24, 1992.

(WCJ's Decision, 10/8/93, at 3; F.F. Nos. 6–14.) The WCJ ultimately granted a suspension of Claimant's benefits effective September 24, 1992, and indefinitely thereafter.

Claimant appealed this decision to the Board, which, by opinion and order dated October 25, 1994, concluded that Claimant was entitled to benefits after his layoff from his job with Solar. The Board reasoned that, based upon *this* Court's decision in *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.),* 155 Pa.Cmwlth. 556, 625 A.2d 751 (1993), *rev'd in part,* 540 Pa.

482, 658 A.2d 766 (1995), "[if Claimant had] been employed at his pre-injury job with residual disability at the time of an economic lay-off, he would have been entitled to a resumption of total disability benefits. [Claimant] should not now be denied benefits simply because he was employed in a less strenuous job (due to his inability to perform his pre-injury [job] ) at the time of the economic lay-off." (Board's Decision, 10/25/94, at 5–6.) The Board ultimately remanded the matter to the WCJ for a calculation of total and partial disability benefits due to Claimant after he was laid off on November 23, 1992.

Several hearings were subsequently held before the WCJ. On May 12, 1995, the parties executed another Supplemental Agreement in which they agreed that Claimant had earnings in the amount of $2,389.89 in 1992, $9,696.50 in 1993, and $7,016.81 in 1994, which were less than Claimant's time-of-injury wages. The parties also agreed that Employer was entitled to a credit of $2,389.89 based upon his 1992 position as a batch plant inspector with Solar.

After a final hearing was held on July 14, 1995, the WCJ issued an order, dated August 28, 1995, directing Employer to pay workers' compensation benefits to Claimant as follows:

For the period from January 1, 1993, to October 13, 1993, employer is entitled to a credit for overpayments of $5,096.71; For the period from October 14, 1993, to December 31, 1993, employer shall pay to claimant $3,016.75 which represents total disability payments at the rate of $274.25 per week; For the period from January 1, 1994, to December 31, 1994, employer shall pay to claimant $9,583.60 which represents partial disability payments at the rate of $184.30 per week; employer shall pay total disability at the rate of $274.25 per week from January 1, 1995, forward. . . .

(WCJ's Order, 9/28/95, at 2; R.R. at 176a.) Employer appealed this decision to the Board, which affirmed by an opinion and order dated December 17, 1996. This appeal ensued.

On appeal,[4] Employer argues that Claimant is not entitled to any benefits after November 23, 1992, the date on which he was laid off from his temporary, light-duty position with Solar, because thereafter his loss of earnings (disability) was the result of economic and weather-related factors rather than his work-related injury. Employer ultimately requests this Court to "reinstate[ ] the suspension granted by [the WCJ] in his October 6, 1993 decision."[5] (Employer's Brief at 7.)

In support of its position, Employer cites the decision of our Supreme Court in *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995). In *Harle*, both this Court and our Supreme Court examined the effect of a layoff on the suspension/reinstatement analysis. The *Harle* case involved a claimant who had received benefits as a result of an injury he sustained while he was employed as a pressman. The claimant's physician initially released the claimant to return to work in a light-duty position, but later released the claimant to return to work at his **pre-injury** position **with no restrictions**, despite the fact that the claimant complained of lingering pain in his thumb. Harle was laid off by his employer, but he obtained a similar position as a pressman on his own although that job paid slightly less per hour than his previous job. The WCJ granted the employer's termination petition, and the Board affirmed. On appeal, this Court reversed the decision of the Board. However, the Supreme Court reversed our decision and in doing so concluded that a suspension of benefits is proper, and no benefits are payable, when a claimant's disability is attributable to factors other than his work-related injury. Our Supreme Court concluded that Harle's loss of earning power was not due to his injury at

work because he was again working in his time-of-injury position as a pressman.

The essential holding of the Supreme Court's decision in *Harle* is that, where a claimant has returned to his pre-injury position with his employer or any other employer *without restrictions*, a suspension of compensation benefits is appropriate when a claimant's subsequent disability is caused by factors other than his work-related injury, *i.e.*, economic factors.

However, the facts of the matter presently before us are drastically different from those involved in *Harle*. Whereas in *Harle*, the claimant returned to his **pre-injury job** with his original employer **without restrictions**, in this case, the record indicates that Claimant remains incapable of returning to his pre-injury position as an Assistant Manager with Employer and that he instead began working for another employer **with restrictions** in a seasonal, light-duty capacity as a batch plant inspector. It should also be noted that these facts were specific findings made by the WCJ in his October 6, 1993 decision and that they have not been contested on appeal.

The WCJ specifically found that Claimant continues to suffer from low back pain, that the weather affects his condition, that Claimant's lifting ability has significantly decreased, that Claimant can perform only light to medium work, that he may not lift more than fifty pounds or frequently bend or stoop. These findings were based upon the testimony of Claimant and Dr. Bakkila, Claimant's physician, and the WCJ found this testimony to be both persuasive and credible.[6] Thus, the record demonstrates that, although his temporary position with Solar ended on November 23, 1992, the Claimant could still not perform his pre-

---

**4.** Our standard of review is limited to determining whether necessary findings of fact were supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth.1996).

**5.** We note that these proceedings were initially commenced by a termination petition filed by Employer.

**6.** Such credibility determinations are within the province of the WCJ as fact finder, and these findings and credibility determinations have not been disputed by Employer on appeal. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703 (Pa.Cmwlth. 1995).

injury job and that he was again experiencing a loss of earnings **as a result of his work-related back injury**.

Moreover, in *Bennett v. Workmen's Compensation Appeal Board (Hartz Mountain Corp.)*, 158 Pa.Cmwlth. 547, 632 A.2d 596 (1993), *petition for allowance of appeal granted and remanded*, 537 Pa. 433, 644 A.2d 729 (1994), this Court addressed the situation where a claimant on temporary total disability fails to pursue a light-duty position in good faith when the position is thought to be temporary when offered but is subsequently eliminated for economic reasons. We ultimately held that a claimant's bad faith refusal of a suitable position thought to be permanent indefinitely relieves the employer of its responsibility to show job availability or pay compensation and stated that "we will look to the situation at the beginning of the proffered permanent employment, not at the end of that employment which only later became temporary." *Id.* 632 A.2d at 598–99. In so holding, we further stated that if a claimant acts in bad faith in refusing a temporary position, benefits will be modified for a period equal to the length of time that the job was actually available. Because in the instant case we are confronted with a situation where the claimant *accepted* a temporary position, we find the legal principles and holding enunciated in *Bennett* to be instructive:

> [W]e hold that where a claimant acts in bad faith in refusing suitable and available work, permanent at the time it is offered, the claimant's benefits are reduced for an indefinite period by the amount of earnings the job would have produced. Where a claimant acts in bad faith in refusing a position which is only a temporary job when offered, benefits will be modified for a period equal to the length of time the job was actually available. The determination

of the duration of the position, either temporary or permanent, is to be made at the time of the referral and is to be based upon the information available to the employer and claimant at the time of the referral.

*Bennett*, 632 A.2d at 600 (footnote omitted); *see also Spinabelli v. Workmen's Compensation Appeal Board (Massey Buick, Inc.)*, 149 Pa.Cmwlth. 362, 614 A.2d 779 (1992),[7] *petition for allowance of appeal denied*, 533 Pa. 654, 624 A.2d 112 (1993).

The record in this case indicates that on October 19, 1992, while he was still working as a batch plant inspector for Solar, Claimant testified at a hearing before the WCJ that he understood his current position to be seasonal in nature and thus limited in duration:

Q: Did you obtain a position [with another] employer[ ]?

. . . .

A: Two and a half weeks ago I got employment.

. . . .

Q: And that was with Solar Testing laboratories?

A: Correct.

Q: What are you doing for them? What is your position?

A: It's a batch plant inspector.

Q: In terms of the physical duties how does this compare to your former job as an assistant manager at the Pennsylvania Liquor Control Board?

A: There [are] no physical duties to this. I oversee the plant inspector which is a technician on the concrete being sent out.

Q: Do you have to do any heavy lifting at all?

---

7. Similarly, in *St. Joe Container Co. v. Workmen's Compensation Appeal Board (Staroschuck)*, 141 Pa.Cmwlth. 672, 596 A.2d 1193 (1991), this Court reduced the benefits of the claimant from total to partial disability because the claimant unreasonably rejected a position of employment that he was capable of performing. We ultimate-

ly held, however, that because he would lose his union seniority if he occupied a nonunion position for longer than six months, that job would no longer be "available" to the claimant after that time and that he was therefore entitled to receive total disability payments thereafter.

A: There is no lifting in this.

. . . .

Q: Is this a temporary position?

A: It's what I call temporary. It's seasonal until the contractor on the project decides to call it quits for the weather—weather permitting is what it comes down to.

(Notes of Testimony (N.T.), 10/19/92, at 8–9; R.R. at 45a–46a.) As noted above, the WCJ found Claimant to be a credible witness, and thus the record reflects that Claimant's light-duty position with Solar was not intended or understood by him to be a permanent position.

As evident from the case precedent cited above, the law is clear that if a claimant **refuses** a temporary position within his medical restrictions in bad faith, his benefits are reduced only to the extent reflecting what he could have earned had he accepted that position. It logically follows, therefore, that where, as here, the claimant **accepts** a temporary or seasonal position with another employer, his benefits are not suspended indefinitely but only to the extent of the terms of the temporary position. It would be absurd to hold that when a claimant rejects a temporary position within his medical restrictions in bad faith he only forfeits compensation benefits in proportion to the income he could have earned from that position, and yet also hold that if he accepts that position, he will forever be precluded from receiving any compensation benefits. Additionally, when a seasonal position temporarily alleviates, at least *to some extent,* an employer's burden to pay compensation benefits, it would make little sense to penalize the claimant for taking the position by indefinitely denying him benefits once that temporary employment has ended.

As the Board concluded, as well as the WCJ on remand, Employer adequately demonstrated job availability and that Claimant did not suffer a loss of earnings between September 24, 1992, and November 23, 1992, while Claimant was employed in a temporary, light-duty capacity with Solar and earned wages equal or greater than his time-of-injury wages. However, although Employer argues that Claimant's benefits should be suspended entirely, it failed to show that, after November 23, 1992, there existed a job available to Claimant within his restrictions and with earnings equal to or greater than his time-of-injury wages, and the record clearly indicates that Claimant remains incapable of returning to his pre-injury position due to his work-related back injury. The record also indicates that, pursuant to the May 12, 1995 Supplemental Agreement, Claimant had various earnings during the years 1992, 1993, 1994, but that he still did not earn wages equal to or greater than his pre-injury job with Employer during those periods.

Therefore, because the record demonstrates that Claimant's earning power is, through no fault of his own, once again adversely affected by his work-related injury and that the reason for Claimant's suspension of benefits ceased to exist after November 23, 1992, *Crowell v. Workmen's Compensation Appeal Board (Johnson Dairy Farm),* 665 A.2d 30 (Pa.Cmwlth.1995), we must affirm the Board's order suspending benefits between September 24, 1992, and November 23, 1992, and reinstating benefits after that date.

*ORDER*

NOW, February 20, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.