**HOUSING AUTHORITY OF THE CITY OF PITTSBURGH,**
Petitioner

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (REDMOND),**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 17, 2005.

Decided Dec. 9, 2005.

———

Margaret M. Hock, Pittsburgh, for peti-
tioner.

Brian T. Kadlubek, Pittsburgh, for respondent.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN JUBELIRER.

The Housing Authority of the City of Pittsburgh (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision to deny its Modification Petition. The WCJ found that Employer failed to meet its burden of proving that work was "available" to Cleatus Redmond (Claimant) because he did not meet the job requirement that he live within the City of Pittsburgh (City).

Claimant sustained an injury on April 29, 1998 while in the scope and course of his employment as a painter. Employer issued a Notice of Temporary Compensation Payable (NTCP), which described the injury as "right plantar fascitis and strain." The NTCP subsequently converted into a Notice of Compensation Payable, totaling benefits at the rate of $513.07 per week based upon an average weekly wage of $769.50. On June 21, 2000, WCJ Briston circulated a decision that amended the description of Claimant's injury to include injuries to both knees.

On July 15, 2002, WCJ Jones issued a decision denying Employer's first modification petition because Employer never sent Claimant a Notice of Ability to Return to Work as required by Section 306(b)(3) of the Workers' Compensation Act (Act).[1] Therefore, Employer was not entitled to a modification of benefits, even though Employer had offered Claimant a modified position which he was physically and vocationally capable of performing.

On January 9, 2003, Employer filed a second Modification Petition, which is at issue here, alleging that it offered Claimant a job on December 30, 2002 within his restrictions, but Claimant failed to respond to the offer. Claimant filed an answer denying the allegations. By interlocutory order circulated April 23, 2003, Employer's request for supersedeas was denied.

After conducting hearings on April 9, 2003 and July 11, 2003, the WCJ, on July 15, 2004, issued a decision denying Employer's Modification Petition. The WCJ found that, on December 13, 2002, Employer had mailed to Claimant a Notice of Ability to Return to Work. (Finding of Fact (FOF) ¶ 3.) The WCJ found the testimony of Darlene Linder, Human Relations Manager for Employer, credible that Employer sent Claimant a letter on December 18, 2002 offering him a sedentary light-duty monitoring position. (FOF ¶ 5.) This position was available on a full-time basis effective December 30, 2002 at a pay rate of $5.15 per hour. *Id.* Accepting this position would have resulted in a partial disability compensation rate of $375.67 per week, based on a wage loss of $563.50 per week. *Id.* Moreover, Linder acknowledged that *Claimant would have to be a resident of the City* in order to work for Employer. *Id.* The WCJ also found the testimony of Dr. Paul Lieber, a Board certified physiatrist[2] who examined Claimant, credible that Claimant was physically capable of performing the modified security monitor position offered to him by Employer. (FOF ¶ 11.) The WCJ also found

1. Act of June 24, 1996, P.L. 350, No. 57 § 4, *as amended,* 77 P.S. § 512(3).

2. A "physiatrist" is a "physician who specializes in physical medicine and rehabilitation." *Merriam–Webster's Collegiate Dictionary* 935 (11th Ed.2004).

that, although the then 58 year-old Claimant had an 8th grade education, and some problems reading and writing the English language (FOF ¶ 4), he had the ability to perform the job functions. (FOF ¶ 12.)

The WCJ also found that, although Claimant was living in his City home at the time he received the job offer, he had filed for bankruptcy earlier in 2002 and had received his discharge in November 2002, before he received the job offer. Claimant had been advised by his attorney that he was losing his City home as a result of the bankruptcy, and had no expectation of remaining in the house "as he no longer had any legal interest in the house." (FOF ¶ 13.) When foreclosure occurred, "he was then forced out of the home and into his daughter's" home in Mt. Lebanon, which is outside the City limits. Claimant continues to live with his daughter and receives some financial help from her. *Id.*

Based on the evidence of record and the credible testimony deduced at the hearings, the WCJ found that the modified position *was not available* to Claimant: residency is a *requirement* of employment for the modified position; because of the foreclosure, Claimant was forced into his daughter's home outside the City limits; and, Employer could not require Claimant to move back into the City to accept the modified job offer. (FOF ¶ 13.) Accordingly, the WCJ concluded that Employer failed to meet its burden of proving that work was made available to Claimant which he was capable of accepting. (Conclusion of Law (COL) ¶ 4.) Subsequently, Employer appealed to the Board.

The Board, without taking additional evidence, affirmed the WCJ's opinion and order agreeing with the WCJ that the modified position was not actually available when it was offered to Claimant because the foreclosure proceedings had begun on his house *before* he received the offer, and

he was forced to move in with his daughter outside the City. Thus, the Board denied Employer's Modification Petition and Employer petitioned this Court for review. On May 27, 2005, this Court denied Employer's Application for Supersedeas.

■ On appeal, Employer argues that the Board erred in finding the proffered position not "available" to Claimant because, at the time of the offer, Claimant was a resident of the City, he remained a City resident for a period of time thereafter, and he subsequently moved outside the City limits for reasons unrelated to his work injury.

■ Our review is limited to a determination of whether there has been a violation of constitutional rights, whether an error of law has been committed, whether the practices and procedures of a Commonwealth agency were followed, or whether all necessary findings of fact made by the WCJ are supported by substantial evidence. *Jeanes Hosp. v. Workers' Comp. Appeal Bd. (Hass)*, 582 Pa. 405, 416, 872 A.2d 159, 166 (2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

■ In a modification petition, the employer bears the initial burden of proving that the claimant is physically capable of performing a certain level of work and that an appropriate job is *available* which fits into the occupational category for which the claimant has been cleared. *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Construction Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987). The burden then shifts to the claimant to demonstrate that he or she has, in good faith, followed through in the job referral. *Id.* If the referral fails to result in a job, then the claimant's benefits should continue. *Id.* The first element of the *Kachinski* inquiry,

*availability,* includes whether the job is "unacceptable for some reason unrelated to the employee's physical abilities or his conduct in connection with a valid job referral, thus rendering it unavailable to the Claimant." *St. Joe Container Co. v. Workmen's Comp. Appeal Bd. (Staroschuck),* 534 Pa. 347, 352, 633 A.2d 128, 130 (1993). The Court has interpreted this to include unavailability for geographic reasons. *See City of Pittsburgh/PMA Management Corp. v. Workers' Comp. Appeal Bd. (Ferraro),* 705 A.2d 492 (Pa.Cmwlth.1998), and *Motor Coils MFG/WABTEC v. Workers' Comp. Appeal Bd. (Bish),* 853 A.2d 1082 (Pa.Cmwlth.2004), *pet. for allowance of appeal granted,* 583 Pa. 692, 878 A.2d 866 (2005).

Employer argues that it met its burden of proving job availability because, at the time the job was offered, Claimant was a resident of the City and, thus, could not refuse the position because of the residency requirement. Furthermore, Employer argues that Claimant acted in bad faith in refusing to accept the proffered position because he would not meet the requirements of the job at a later date for reasons unrelated to his work injury. Employer cites this Court's decision in *Bennett v. Workmen's Comp. Appeal Bd. (Hartz Mountain Corp.),* 158 Pa.Cmwlth.547, 632 A.2d 596 (1993), *pet. for allowance of appeal granted,* 537 Pa. 433, 644 A.2d 729 (1994), for support.

Employer argues that, in *Bennett,* this Court focused on the time the job was offered, and held that the claimant there was not entitled to a reinstatement of total disability benefits because he refused work that was suitable and available at the time it was offered, in bad faith. After the claimant refused the proffered work in *Bennett,* employer sold the division where the modified work would have been. When the employer filed a modification petition alleging that the claimant had failed to accept the offered modified position, claimant argued that, even if the job were found to be within his physical limitations, his benefits should have only been modified for the period of time, between the time the offer was made to him until the sale of the division, that the job was actually available. The referee rejected the claimant's argument and concluded that, because the claimant's loss of the position had been his own fault, the claimant was not entitled to a reinstatement of total disability benefits as of the date the division was sold; the Board subsequently affirmed.

On appeal to this Court, the claimant again argued that, because the offered job subsequently became unavailable when the division was sold, he should be treated like a claimant who had accepted the job and then been laid off. However, this Court affirmed the Board, stating that the inquiry there was whether the claimant acted in good faith in refusing the job when it was offered. Because the claimant acted in bad faith in refusing suitable and available work which was permanent when offered, the claimant's benefits were reduced for an indefinite period by the amount of earnings the job would have produced. *Id.* at 600.

Employer argues that, as in *Bennett,* the focus should be on the time the job was offered and, at that time, the job was available to Claimant because he was a resident of the City. Employer asserts that it had no knowledge that Claimant would *subsequently* move out of the City due to financial problems, and that Claimant acted in bad faith when he did not accept or respond to the job offer. Alternatively, Employer argues that, at the very least, Claimant's benefits should have been modified from the effective date of the job offer, December 30, 2002, through 90 days

after the date that Claimant moved outside the City limits.

Claimant argues that the Board's decision is consistent with this Court's prior decision in *City of Pittsburgh/PMA Management Corp.*, in which this Court denied the employers' petition to suspend benefits because the job referral was "unavailable" to the claimant because she did not meet the geographical requirement for the proffered job. This Court, in *City of Pittsburgh/PMA Mgmt. Corp.*, stated that nothing in the statute restricts a disabled employee from moving from the geographical area of her "time-of-injury job" and, if the move is made in good faith, the employer must refer the disabled employee to jobs within reach of the employee's new residence in order for the job to be "available" and so to modify benefits. 705 A.2d at 496. The claimant in that case suffered a work-related injury while employed by the City and was no longer able to care for her house, which was located within the City. While totally disabled, she was unable to find a suitable home within the City, purchased one outside the City, and, at the direction of her supervisor, resigned from her position. A few months later, claimant's doctor cleared her to full-duty work without restriction. The employer then petitioned for termination or, in the alternative, suspension of benefits on the basis that she was cleared for work and that she removed herself from the work force when she moved outside of the City. This Court, like the Board here, held that the proffered modified position was not available.

Likewise, in *Motor Coils MFG/WABTEC,* this Court held that the job offer was not available to the claimant. Although there was no residency requirement in that case, geographic distance caused the light-duty job in Pennsylvania, which was offered by employer after claimant had moved to Oklahoma with her husband, to be unavailable because it was not within reach of her current residence. 853 A.2d at 1086–87.

We agree with Claimant that the Board was correct in finding the proffered modified position unavailable. This situation is not controlled by *Bennett,* as here there was no finding of bad faith on the part of the Claimant. In this case, although Claimant did not physically move out of his City home until several days after the modified position was to begin, he, like the claimant in *City of Pittsburgh/PMA Mgmt. Corp.,* was aware that the job had a residency requirement he could not meet because he no longer had any right to his City residence due to his bankruptcy and pending mortgage foreclosure. These findings of the WCJ are supported by substantial evidence, (FOF ¶ 4; 7/11/03 Test. at 22–23, 4/9/03 Test. at 17), as is his conclusion that the modified position was not "available." [3] Therefore, we agree with the Board that the modified position was not available to Claimant at the time it was offered.

Accordingly, we affirm the order of the Board and hold that the modified position was not available to Claimant.

### ORDER

**NOW,** December 9, 2005, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.

---

3. Because Employer failed to meet its burden of showing job availability, there is no need to reach the issue of whether Claimant acted in good faith.