CITY OF PITTSBURGH/PMA MANAGEMENT CORPORATION, Petitioner,

v.

WORKERS' COMPENSATION APPEAL BOARD (FERRARO), Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 6, 1997.

Decided Jan. 2, 1998.

Dale A. Cable, Pittsburgh, for petitioner.

James R. Burn, Jr., Pittsburgh, for respondent.

Before COLINS, President Judge, McGINLEY, J.(P.), and RODGERS, Senior Judge.

McGINLEY, Judge.

The City of Pittsburgh (City) appeals from an order of the Workers' Compensation Appeal Board (Board) which reversed a decision of a referee[1] to suspend Patricia Ferraro's (Claimant) workers' compensation benefits.

The City employed Claimant as a school crossing guard. On March 23, 1992, Claimant suffered a work-related injury, a lumbar strain. Pursuant to a notice of compensation payable dated April 15, 1992, Claimant received $202.10 per week in compensation benefits based upon an average weekly wage of $225.67. On July 10, 1992, Claimant signed a final receipt acknowledging that she was fully recovered from the work injury. Claimant's disability recurred, and the parties executed a supplemental agreement dat-

ed December 30, 1992. Claimant returned to work on March 19, 1993, and the parties again executed a supplemental agreement dated April 23, 1993, and suspended Claimant's benefits. The parties executed another supplemental agreement on October 15, 1993, and total disability benefits resumed on August 30, 1993.

While totally disabled, Claimant found that she was no longer able to care for her house, which was located within the City. Claimant stated she was unable to find a suitable residence within the City. She sold her City house and purchased one in Shaler Township (Township). On September 30, 1993, Claimant, at the direction of her supervisor, resigned from her position as a school crossing guard. On October 6, 1993, Claimant closed on the purchase of the house in the Township.

On November 23, 1993, Claimant's physician, Dr. Paul Spencer Lieber (Dr. Lieber) released Claimant to full duty without restriction. The City then petitioned for termination, or in the alternative, suspension of Claimant's benefits as of November 23, 1993, on the basis that Dr. Lieber cleared Claimant to work and that Claimant removed herself from the work force when she moved from the City. Claimant filed an answer denying the City's allegations.

Referee's hearings were held on March 14, 1994, and on December 12, 1994. The City presented the deposition testimony of Elaine Alter (Alter), acting supervisor of school crossing guards for the City, and the deposition testimony of Dr. Lieber. Alter testified that Claimant's job would have remained available provided Claimant did not resign. Deposition of Elaine Alter, November 15, 1994, at 21; Reproduced Record (R.R.) at 79a.

Dr. Lieber, board certified in physical medicine and rehabilitation and also in electrodiagnostic medicine, testified that he treated Claimant fourteen times between December 1992, and March 1, 1994. Dr. Paul

1. Referees are now called Workers' Compensation Judges under the new amendments effective August 31, 1993, to Section 401 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 701. *See* Section 14, Act 44, Act of July 2, 1993, P.L. 190. Because this action was commenced prior to the effective date of the amendments, this Court will refer to Pamela L. Briston as a referee and not as a Workers' Compensation Judge.

Spencer Lieber Deposition (Dr. Lieber Deposition), June 9, 1994, at 11; R.R. at 115a. Dr. Lieber also testified that Claimant was able to return to work as a crossing guard as of November 23, 1993. Dr. Lieber Deposition at 20–21; R.R. at 124a–125a.

Claimant testified and also presented the deposition testimony of Gerald W. Pifer, M.D. (Dr. Pifer). Claimant stated that at the time of the hearing the pain continued in her lower back and sometimes prevented her from walking. Notes of Testimony February 24, 1994, (N.T. 2/24/94) at 14; R.R. at 18a. Claimant explained that she moved when she could no longer care for her house because of her back pain, and that she unsuccessfully searched for a house or an apartment within the City. Notes of Testimony, December 12, 1994, (N.T. 12/12/94) at 17; R.R. at 52a. Claimant further testified that she resigned from her position as a crossing guard at the direction of her supervisor, and if she were offered a job with the City, she would revoke her resignation.[2] On cross examination Claimant admitted that she did not seek employment after she resigned from the City.

Dr. Pifer, board certified in orthopedic surgery testified that he twice examined Claimant. Dr. Pifer opined within a reasonable degree of medical certainty that Claimant was disabled from carrying out various physical activities including working as a crossing guard. Dr. Pifer testified that the cause of

Claimant's disability was her fall in the course of her employment on March 23, 1992. Deposition of Dr. Gerald W. Pifer, July 29, 1994, at 10; R.R. at 170a.

On June 22, 1995, the referee dismissed the City's termination petition, granted the City's suspension petition and made the following relevant findings of fact:

14. Based upon a review of the foregoing as well as all evidence of record, this judge finds that the employer has met their (sic) burden of proof in the suspension petition.

a. In so finding, this judge accepts as credible and persuasive the testimony of Dr. Paul Lieber, who was the claimant's treating physician up until March of 1994. It is found that this doctor had various opportunities to evaluate the claimant during the time that she was under his care and was able to return to work for various periods of time.

b. His testimony that the claimant was capable of performing the job duties of the school crossing guard is accepted as persuasive and credible.

c. It is found, based upon the testimony of the claimant that she voluntarily removed herself from consideration of employment with the City of Pittsburgh by moving outside of the city limits. The testimony of the claimant that she needed to move because she could not take care of her house, which was a large home, is found to be credible, however, it is specifi-

---

**2.** Attorney Klein, representing Claimant, questioned Claimant concerning her resignation.

Q: Why did you resign?
A: I was told that I had to resign.
Q: If you had not been told that you had to resign in order to move, would you have resigned?
A: No, because I went through therapy and it returned me back to work and I would be fine for a little while and then the pain came back and I would have to go and see the doctor again and be back on therapy and taking medication and cortisone shots.
N.T. 2/24/94 at 16, 20; R.R. at 20a, 24a.
At the second hearing Attorney Burn, representing Claimant, questioned Claimant concerning her resignation.
Q: Why did you leave?
A: I left because —— am I allowed to say that I was told?
Q: If you give me the name of the person. By whom?

A: Sergeant Lalley (phonetic) was the only one taking care of me at that time.
Q: Is that your supervisor?
A: That was the supervisor at that time. And I told her that I had bought this house and I said it's a small house and I said I had to have it for my condition. And she said where's it at. I said it's in Shaler. And she shook her head and she said -You can not live in the City of Pittsburgh. You can not (sic) work for us, if you don't live in Pittsburgh.
N.T. 12/12/94 at 12–13; R.R. at 47a–48a.
Claimant also expressed her desire to work.
Q: If Mr. Soilis would offer on behalf of the City of Pittsburgh, offer you a job as a crossing guard for the City of Pittsburgh, would you revoke your resignation?
A: Yes, I would. I want to work. I am an active woman. I want to work. It's just that I am afraid with the pain.
N.T. 2/24/94 at 17; R.R. at 21a.

cally found by this judge that the claimant could have moved to a smaller residence within the City of Pittsburgh but instead chose to remove herself from consideration of employment by moving to Shaler which is outside the City of Pittsburgh. It is noted that the Claimant's testimony reflects that when she told Sergeant Lalle that she had purchased a home in Shaler, she was told that she would not be permitted to continue to work for the employer because she would be living outside of the City of Pittsburgh.

d. This judge does not find the testimony of Dr. Pifer to be as persuasive as the testimony of Dr. Lieber. It is noted that on neurological examination of Dr. Pifer found the claimant to be normal.

Referee's Decision, June 22, 1995, Findings of Fact No. 14 at 10; R.R. at 224a.

Claimant appealed to the Board which reversed the order of the referee and reinstated Claimant's benefits. The Board concluded that City had the burden under *Kachinski v. Workers' Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987) to prove that a job was actually available for Claimant and was actually referred to Claimant. Quoting *Kachinski*, the Board defined the term "actually available" as follows:

[A] position may be found to be 'actually available' or within the Claimant's reach, if it can be performed by the Claimant, having regard to his physical restrictions and limitations, his age, his intellectual capacity, his education, his previous work experience, and other relevant considerations, such as his place of residence. (citations omitted).

Board Opinion, February 11, 1997, at 4; R.R. at 232a.

The Board also reviewed whether the City was limited to proving the availability of work in the geographical area where Claim-

ant presently lived as opposed to the municipality where she worked at the time of her injury. Adhering to this Court's decision in *Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board (Dennis)*, 32 Pa.Cmwlth. 147, 377 A.2d 1304 (1977), the Board reasoned that absent bad faith on the part of Claimant in moving, the City had the burden of proving that a job was available to Claimant that was compatible with her new residence. The Board did not find any evidence of bad faith on the part of Claimant in moving from the City.[3] Therefore, the Board determined that the school crossing guard position the City offered to Claimant in November 1993, was not "actually available" and reversed. The City appeals.

On appeal[4] the City contends that the Board erred in reversing the referee's decision because Claimant was released by Dr. Lieber to perform her time of injury job and could not return for reasons totally unrelated to her work injury. The City also contends that the Board erroneously reversed the referee because Claimant removed herself from the work force by moving outside the City even though she knew that City residency was a condition of employment.

■ When seeking a suspension of compensation benefits, the employer must establish that the claimant's disability has decreased to the point that the claimant is capable of performing his pre-injury job or other work without loss of earnings and that such work is available. *Carpentertown Coal & Coke Co. v. Workmen's Compensation Appeal Board (Seybert)*, 154 Pa.Cmwlth. 408, 623 A.2d 955, 957, *petition for allowance of appeal denied*, 535 Pa. 640, 631 A.2d 1011 (1993). Our Pennsylvania Supreme Court adopted the following requirements which an employer must meet to satisfy its burden to modify compensation payments:

1. The employer who seeks to modify a claimant's benefits on the basis that he has

---

3. Although the Board's opinion refers to the City's offer of Claimant's time of injury job to her in November, 1993, there is nothing in the record to indicate that the job was offered to her, only that it would have been available had Claimant not resigned.

4. Our review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Vinglinsky v. Workmen's Compensation Appeal Board (Penn Installation)*, 139 Pa. Cmwlth. 15, 589 A.2d 291 (1991).

recovered some or all of his ability must first produce medical evidence of a change in the employee's condition.

2. The employer must produce evidence of a referral or referrals to a then open job (or jobs), which fits the occupational category which the claimant has been given medical clearance e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

*Kachinski*, 516 Pa. at 252, 532 A.2d at 380.

■ Additionally, if the claimant unequivocally states that he or she has no intention of seeking future employment, an employer need not prove the availability of employment. *Moreno–Leonardo v. Workmen's Compensation Appeal Board (Kozel Engineering)*, 164 Pa.Cmwlth. 384, 643 A.2d 151, 153, *allocatur granted*, 540 Pa. 588, 655 A.2d 518 (1995).

In the present case the referee found, based upon the City's medical evidence, that Claimant's condition changed and that she was able to return to work as a crossing guard as of November 23, 1993. The City satisfied the first step of the *Kachinski* burden.

As to the second step of the *Kachinski* burden, the City did not produce evidence of a referral to an available job. Alter testified that Claimant's job as a crossing guard would have been available to Claimant if she had not resigned when she moved from the City. This unique situation presents the following difficulty. City employees must reside in the City. Claimant testified that she resigned from her position with the City only because her supervisor told her that she had to resign if she no longer resided in the City. Claimant stated she was willing to revoke her resignation if the City offered her a job as a crossing guard. The City treated Claimant's move to the Township and resignation as evidence that she was unable to return to her time of injury job for reasons unrelated to her injury and that she voluntarily removed herself from the work force.

■ However, as the Board pointed out, the Act does not restrict a disabled employee from moving from the geographical area of his time of injury job. If the move is made in good faith, an employer, to modify benefits, must refer the disabled employee to jobs within reach of the employee's new residence. In *Yellow Freight*, Forrest Dennis (Dennis), a worker, suffered a work-related injury and received compensation. Dennis was later cleared to work with some restrictions. Yellow Freight System, Inc. (Yellow Freight), Dennis' employer, offered Dennis various jobs in Lancaster where Dennis had lived at the time of his injury. However, Dennis had moved to Delaware after the injury. This Court held that Yellow Freight had to find jobs for Dennis which were within geographical reach of his new residence. *Yellow Freight*, 377 A.2d at 1306.

Here Claimant moved from the City to the Township based on the belief that she could no longer adequately care for her house. The referee found no bad faith on the part of Claimant in making this move. Even though the Township geographically neighbors the City, Claimant could not return to her time of injury job, if offered, because of the residency requirement. We must answer the question whether a person injured while working a job with a residency requirement should be forced, while disabled, to remain within the municipal boundaries of the employer or risk losing benefits. The City proposes that a disabled City employee who moves from the City, and at the direction of her supervisor tenders a resignation, removes herself from the work force, and is subject to a suspension of benefits.

■ We are not persuaded that a suspension under such circumstances is appropriate. No one contests that Claimant moved to the Township in good faith. In order to satisfy the second step of *Kachinski*, the City must find work available to Claimant within reach of her current residence. The City failed to produce evidence of referrals for any available jobs and did not meet its burden for a suspension.

Understandably, the City relies on *Harle v. Workmen's Compensation Appeal Board*

*(Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995), but we believe this is the incorrect path. *Harle* stands for the proposition that an employer is entitled to a suspension of benefits when an employee who has been released to work his time of injury job fails to do so for reasons unrelated to the work injury. In *Harle*, our Pennsylvania Supreme Court suspended John Harle's (Harle) benefits after Harle returned to work at a lower paying job in the same field after his employer had ceased operations. The Court reasoned that Harle's loss in earnings was not the result of his injury but was caused by economic factors unrelated to his injury. The Court suspended Harle's benefits because Harle still had a work-related injury. *Harle*, 540 Pa. at 489, 658 A.2d at 770. Pivotal in *Harle* was that economic factors caused the loss of earnings rather than the relocation of a disabled worker.

The record does not support the City's assertion that Claimant voluntarily removed herself from the work force when she relocated outside the City. Claimant was disabled at the time of her move, and she resigned only because of the City's demand. She further testified that if the City offered a job to her, she would revoke her resignation.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 2nd day of January, 1998, the order of the Workers' Compensation Appeal Board at No. A95–2678 and dated February 11, 1997, is affirmed.