**MOTOR COILS MFG/WABTEC,**
Petitioner,

v.

**WORKERS' COMPENSATION
APPEAL BOARD (BISH),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 2, 2004.

Decided June 11, 2004.

Reargument/Reconsideration Denied
En Banc Aug. 11, 2004.

Gregory J. Fischer, Pittsburgh, for petitioner.

Thomas G. Wagner, St. Marys, for respondent.

BEFORE: COLINS, President Judge, SMITH–RIBNER, J., and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Motor Coils MFG/WABTEC (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming the decision of the Workers' Compensation Judge (WCJ), denying and dismissing Employer's petition to suspend the compensation benefits of Amy Bish (Claimant). We now affirm.

Employer is engaged in the business of manufacturing electric motors for diesel locomotive engines. Claimant worked for Employer for approximately twenty years. Employer originally employed Claimant as a glass machine operator. Claimant's job required her to constantly wrap copper engine coils, involving repetitive use of her hands. As a result of her job duties, Claimant developed bilateral carpal tunnel syndrome and she was unable to continue working at her position after July 28, 1997. Employer accepted liability for Claimant's condition pursuant to a notice of compensation payable dated December 16, 1997.

Claimant eventually came under the care of Dr. Stephen Gick, an orthopedic surgeon. She underwent decompression surgery of her right carpal tunnel on December 4, 1997, and decompression of her left carpal tunnel on February 19, 1998. Claimant returned to work with Employer on June 8, 1998. However, Claimant returned to a light-duty position as a storeroom assistant at wages equal to or greater than her pre-injury wages. The parties executed a supplemental agreement dated June 19, 1998, noting Claimant's return to work and suspending Claimant's benefits as of June 8, 1998.

In the late summer of 2000, Employer began laying off a number of its employees, 126 to be exact. Claimant and her husband, who also worked for Employer, were two of these employees. The employees were offered an "opt-out" agreement or separation package at this time, thereby terminating their employment with Employer. Twenty-four of the 126 employees chose to accept this separation package, including Claimant's husband, but Claimant herself rejected the same and was simply laid off.[1]

On October 26, 2000, Claimant and Employer executed another supplemental agreement indicating that Claimant's disability had recurred as of August 2, 2000, and reinstating her total disability benefits as of that date. In the meantime, Claimant's husband had received an offer of employment as a dental lab technician in Grove, Oklahoma. Claimant's husband had been previously trained in this job and he had performed this job part-time while working for Employer. In addition, the salary at the Oklahoma job was nearly twice that which Claimant's husband had received from Employer.

Claimant's husband officially accepted the Oklahoma job offer on November 10, 2000, and he and Claimant relocated on November 25 or 26, 2000. Claimant sought employment in Oklahoma but was unable to find any jobs within her capabilities. Approximately four months later, by letter dated March 14, 2001, Employer advised Claimant that her previous light-duty job as a storeroom assistant was again available as of March 26, 2001, full-time, forty hours per week at wages equal to or greater than her pre-injury wage. Employer's letter further advised Claimant that it was willing to make any necessary accommodations. Nevertheless, Claimant refused Employer's offer.

On March 20, 2001, Employer filed a petition to suspend Claimant's compensation benefits as a result of her refusal to accept the offered job. Claimant filed an answer to Employer's petition alleging that the job offer was not available, not within her limitations and not in good faith. Claimant indicated that she and her family had relocated to Oklahoma for her husband's employment prior to the job offer. The case was assigned to the WCJ and proceeded with hearings.

At these hearings, the parties stipulated that Claimant's medical condition had remained unchanged since her lay off on August 2, 2000.[2] The parties also stip-

---

1. Claimant appears to have been laid off on August 2, 2000.

2. In this regard, the parties stipulated to the submission of medical evidence by way of a

ulated that Claimant did indeed receive notice of an offer of employment at Employer's business as a storeroom assistant, effective March 26, 2001. Further, the parties stipulated that the offered job represented the same general position which Claimant had been performing as of the date of her lay off.

In support of its suspension petition, Employer presented the deposition testimony of Ronald Shannon, its environmental safety and health manager. Mr. Shannon indicated that through Claimant's lay off in August of 2000, she had been working in a modified-duty job as a storeroom assistant. Mr. Shannon noted that Claimant's husband had also been in the employ of Employer, until he was laid off on June 29, 2000. At that time, Mr. Shannon indicated that Claimant's husband chose to accept a severance package from Employer, thereby terminating his employment with the company.

Mr. Shannon also indicated that at the time of Claimant's lay off, she too was offered a severance package but rejected the same, thereby remaining eligible for recall to employment. Mr. Shannon fur-ther indicated that on March 14, 2001, an offer of employment was made to Claimant to return to her modified storeroom assistant job. Mr. Shannon explained that the job continued to be performed for Employer and that the job again became available to Claimant as a result of her seniority, which put her in a position to bump into the job.

Employer also presented the deposition testimony of Dennis Pesock, its operations manager at the facility where Claimant had worked. Mr. Pesock reiterated that prior to her lay off, Claimant worked as a storeroom assistant. Mr. Pesock also reiterated that at the time of her lay off, Claimant was offered a severance package. Mr. Pesock noted that the severance package offered to Claimant was comparable to the one accepted by her husband. Nevertheless, Mr. Pesock indicated that Claimant rejected the same. Mr. Pesock thereafter specifically denied ever informing Claimant that her lay off was permanent.[3]

In opposition to Employer's suspension petition, Claimant presented her own deposition testimony. In this testimony, Claimant detailed her work history with

report of Dr. David Cooper, wherein Dr. Cooper opined that Claimant continued to suffer from residual disability associated with her bilateral carpal tunnel syndrome, thereby limiting her work capacity.

3. In further support of its petition, Employer presented the deposition testimony of Robert Boyer, a vocational case manager for Concentra Managed Care Services, who performed a vocational assessment of Claimant at Employer's request in November of 2000. Mr. Boyer also conducted a labor market survey in the area of Employer's facility. Nevertheless, the WCJ held that Mr. Boyer's testimony was inadmissible and irrelevant as he had not been approved as a vocational expert by the Department of Labor and Industry (the Department) in accordance with Section 306(b)(2) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as *amended,* 77 P.S. § 512(2). In so

holding, the WCJ relied on several decisions from this Court. *See Caso v. Workers' Compensation Appeal Board (School District of Philadelphia),* 790 A.2d 1078 (Pa.Cmwlth. 2002), *reversed,* 576 Pa. 287, 839 A.2d 219 (2003); *Walker v. Workers' Compensation Appeal Board (Temple University Hospital),* 792 A.2d 628 (Pa.Cmwlth.2002); *Summit Trailer Sales v. Workers' Compensation Appeal Board (Weikel),* 795 A.2d 1082 (Pa.Cmwlth.2002), *petition for allowance of appeal denied,* 569 Pa. 727, 806 A.2d 865 (2002). We note, however, that any reliance on these cases is no longer valid based upon our Supreme Court's reversal in *Caso,* wherein the Court held that there is no requirement that the Department "pre-approve" interviewers and the WCJ may consider the qualifications of an interviewer in light of the Department's regulations. *See Altoona Wholesale Distributors v. Workers' Compensation Appeal Board (Bell),* 841 A.2d 651 (Pa.Cmwlth.2004).

Employer, her work injury and her subsequent and ongoing medical problems. Claimant also indicated her belief at the time of her lay off that the same was permanent, based upon her discussions with various company representatives, including Mr. Pesock. Claimant also discussed her husband's work history, both with Employer and as a dental lab technician, as well as the family's move to Grove, Oklahoma. Claimant further indicated her belief that the offered job was not within her physical capabilities.

Ultimately, the WCJ issued a decision and order denying and dismissing Employer's suspension petition. Despite finding that the offered job from Employer was made available to Claimant within her medical and vocational capabilities and at wages equal to or greater than her pre-injury wages, the WCJ further found that Claimant's refusal of the job was in good faith as a result of her relocation to Oklahoma with her husband. The WCJ accepted the testimony of Mr. Shannon and Mr. Pesock as credible regarding the former, and accepted the testimony of Claimant as credible regarding the latter. The WCJ further held that the standards for a modification/suspension of benefits as enunciated in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), were still applicable despite amendments to Section 306(b)(2) of the Act.[4]

Both Employer and Claimant appealed to the Board. Employer appealed the WCJ's finding that Claimant acted in good faith in refusing its job offer. Claimant appealed the WCJ's finding that the offered job was within her medical and vocational capabilities. Regarding Employer's appeal, the Board indicated that the issue in this case was not one of good faith, but whether the offered job was actually available to Claimant. As Claimant had relocated to Oklahoma for valid reasons, the Board concluded that said job was not available. Hence, the Board affirmed the decision of the WCJ, albeit on different grounds. Regarding Claimant's appeal, the Board affirmed the WCJ based upon the credible testimony of Mr. Shannon as well as Claimant's own admission that she was still capable of performing the job she did prior to her lay off. Employer then filed a petition for review with this Court.

On appeal,[5] Employer argues that the Board erred as a matter of law in affirming the decision of the WCJ. More specifically, Employer argues that the WCJ and the Board erred in utilizing the standards of *Kachinski* and in failing to find that the plain language of Section 306(b)(2) of the Act controls the outcome of this case. We disagree.

Section 306(b)(2) of the Act provides as follows:

> 'Earning power' shall be determined by the work the employe is capable of performing and shall be based upon expert opinion evidence which includes job listings with agencies of the department,

4. The amendments are popularly referred to as "Act 57" or the Act of June 24, 1996, P.L. 350, No. 57, § 4.

5. Our scope of review in a workers' compensation appeal is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

We acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Wintermyer*, 571 Pa. at 203, 812 A.2d at 487.

private job placement agencies and advertisements in the usual employment area. Disability partial in character shall apply if the employe is able to perform his previous work or can, considering the employe's residual productive skill, education, age and work experience, engage in any other kind of substantial gainful employment which exists in the usual employment area in which the employe lives within this Commonwealth. If the employe does not live in this Commonwealth, then the usual employment area where the injury occurred shall apply. If the employer has a specific job vacancy the employe is capable of performing, the employer shall offer such job to the employe. In order to accurately assess the earning power of the employe, the insurer may require the employe to submit to an interview by an expert approved by the department and selected by the insurer.

We have recently addressed numerous cases wherein employers argue that the standards enunciated in *Kachinski* are eased and/or are no longer viable after the effective date of the 1996 amendments to Section 306(b)(2) of the Act.[6] In each of these cases, we held that the *Kachinski* standards remain viable and applicable, i.e., said standards still apply to job offers that are required to be made by an employer under the new provisions of Section 306(b)(2). Moreover, we have specifically indicated that the *Kachinski* standards are "still applicable in situations where an employer seeks a modification of benefits based on an offer of a specific job with the employer." *South Hills Health System*, 806 A.2d at 968; *see also Allied Products and Services.*

■ Furthermore, when such a specific job offer is made by an employer, the employer "retains the duty to evaluate the job offering in light of a claimant's particular physical, intellectual and vocational limitations as required under *Kachinski.*" *South Hills Health System*, 806 A.2d at 968.[7] However, there were additional requirements under *Kachinski* which we believe also remain viable under the new provisions of Section 306(b)(2) of the Act, i.e., an offered job must be actually available to a claimant. To be actually available, we have previously held that the offered job must be within reach of a claimant's current residence. *See USAir, Inc. v. Workers' Compensation Appeal Board (Keene)*, 706 A.2d 888 (Pa.Cmwlth. 1998); *City of Pittsburgh v. Workers' Compensation Appeal Board (Ferraro)*, 705 A.2d 492 (Pa.Cmwlth.1998).[8]

■ In this case, approximately four months following her lay off from employment with Employer, Claimant relocated

---

6. Such cases include *Anderson v. Workers' Compensation Appeal Board (Pennsylvania Hospital)*, 830 A.2d 636 (Pa.Cmwlth.2003); *Allied Products and Services v. Workers' Compensation Appeal Board (Click)*, 823 A.2d 284 (Pa.Cmwlth.2003); *South Hills Health System v. Workers' Compensation Appeal Board (Kiefer)*, 806 A.2d 962 (Pa.Cmwlth.2002); *Darrall v. Workers' Compensation Appeal Board (H.J. Heinz Company)*, 792 A.2d 706 (Pa.Cmwlth. 2002); *Hoover v. Workers' Compensation Appeal Board (Harris Masonry, Inc.)*, 783 A.2d 886 (Pa.Cmwlth.2001), *petition for allowance of appeal denied*, 569 Pa. 725, 806 A.2d 864 (2002).

7. Nevertheless, when an employer offers a claimant a light-duty/modified job that the claimant had previously performed, the employer need not be specific as to the job duties required in that position. *See Darrall.* In this case, the parties stipulated at the hearings before the WCJ that the offered job represented the same general position that Claimant had performed until the time of her lay off.

8. In *City of Pittsburgh*, we noted that the Act does not restrict a disabled employee/claimant from moving from the geographic area of his or her time-of-injury job.

to Oklahoma with her husband as her husband had obtained employment as a dental lab technician, a field in which he had previous training. The WCJ found that Claimant's actions in relocating were in good faith. The Board affirmed the decision of the WCJ on the ground that the offered job was not actually available to Claimant.[9] We agree with the Board that the job in Pennsylvania offered by Employer was not actually available to Claimant as it was not within reach of her current residence.

Thus, we cannot say that the WCJ or the Board erred in utilizing the standards of *Kachinski* or in failing to find that the plain language of Section 306(b)(2) of the Act controls the outcome of this case. Nor can we say that the Board erred as a matter of law in affirming the decision of the WCJ.

Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 11th day of June, 2004, the order of the Workers' Compensation Appeal Board is hereby affirmed.

9. Employer alleges that the Board erred in affirming the decision of the WCJ on the grounds of job availability as that issue was never raised before the WCJ. However, as the Board noted in its opinion, we have previously held that the Board may still affirm the decision of the WCJ if the WCJ makes the right decision but for the wrong reasons. *Long Service Company v. Workmen's Compensation Appeal Board (Schell)*, 99 Pa.Cmwlth. 112, 512 A.2d 1322 (1986). Likewise, this Court may affirm on grounds different than those relied upon by the court or agency below if such grounds for affirmance exist. *Belitskus v. Hamlin Township*, 764 A.2d 669 (Pa.Cmwlth.2000), *petition for allowance of appeal denied*, 565 Pa. 676, 775 A.2d 809 (2001); *Continuous Metal Technology, Inc. v. Unemployment Compensation Board of Review*, 740 A.2d 1219 (Pa.Cmwlth.1999).