# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kedecia Manna d/b/a 9th and : CASES CONSOLIDATED
Lloyd Inspections :
                     :
            v. : Nos. 1057 C.D. 2022
                     :          1058 C.D. 2022
Commonwealth of Pennsylvania, : Submitted: July 5, 2024
Department of Transportation, :
Bureau of Motor Vehicles, :
                    Appellant :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge


<u>OPINION NOT REPORTED</u>


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER        FILED: November 14, 2024

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (Department) appeals[1] from the Orders of the Court of Common Pleas of Delaware County (trial court), which sustained the appeals of Kedecia Manna (Manna), d/b/a 9th and Lloyd Inspections (Station), from the Department's suspension of Manna's Certificate of Appointment as an Official Safety Inspection Station (Safety Certificate) and Certificate of Appointment as an Official Emission Inspection Station (Emissions Certificate) (together, Certificates), and reinstated the

---

[1] On October 31, 2024, the Department filed a Motion for Leave to File Praecipe to Withdraw Appeal (Motion to Withdraw). Kedecia Manna subsequently filed an answer opposing the Motion to Withdraw. Upon consideration of the Motion to Withdraw and the answer thereto, we deny the Motion to Withdraw.

Certificates.[2]  Before this Court, the Department argues the trial court erred or abused its discretion in reinstating the Certificates because the evidence supported a finding that the violations occurred.  Upon review, we affirm.

## I.     BACKGROUND

Manna operates the Station located at 1033 West Ninth Street in Chester, Pennsylvania.  On April 2, 2021, the Department hand delivered notices to Manna suspending the Certificates and fining Manna for alleged violations of the Department's regulations discovered during audits performed one day earlier. (Reproduced Record (R.R.) at 21a, 55a.)    Specifically, Manna's Emissions Certificate was suspended for a term of one year for faulty inspection of equipment or parts, three months for improper assigning of certificate of inspection, and three months, or until produced, whichever is greater, for failure to produce records upon demand.[3]  (*Id.* at 55a.)  Manna was also fined $2,500.00 for the alleged violation of faulty inspection of equipment or parts, and Manna received a warning for an alleged violation of improper security of certificate of inspection.  (*Id.*)  The notice stated these violations were the result of an audit the prior day and include violations for failure to test a gas cap, failure to provide sticker receipts and Garage Keepers Liability Insurance, and failure to account for unused stickers.  (*Id.*)  The Safety Certificate was suspended for four months for failure to affix a certificate of

_____

[2] The appeal related to the Emissions Certificate suspension was given trial court docket number cv-2021-003849 and docket number 1057 C.D. 2022 in this Court.  The appeal related to the Safety Certificate suspension was given trial court docket number cv-2021-004058 and docket number 1058 C.D. 2022 in this Court.  The Court *sua sponte* consolidated these appeals by order dated July 17, 2023.  In addition to these appeals, there are numerous other appeals involving the parties either recently decided by the Court or still pending before it.

[3] The suspensions were to commence immediately and be consecutive to one another, for a total period of 18 months, as well as consecutive to any other suspensions.  (R.R. at 55a.)

2

inspection immediately upon successful completion of inspection, six months or until produced for failure to produce records, certificate of inspection, signature cards, certificate of appointment, or mechanic card upon demand, and one year for improper and careless record keeping.[4] (*Id.* at 21a.) These violations related to an audit performed 1 day earlier at which 8 inspections were noted as passing but awaiting stickers, not entering 50 inspections into the MV-431 book,[5] and not producing the MV-431. (*Id.*) Both notices said the suspensions were pursuant to Section 4724 of the Vehicle Code, 75 Pa.C.S. § 4724,[6] and the notice related to the Safety Certificate also cited the Department's regulation at 67 Pa. Code § 175.51(a), whereas the notice related to the Emissions Certificate cited 67 Pa. Code § 177.602(a).[7] (R.R. at 21a, 55a.) Attached to the notices were copies of the audit reports upon which they were based. (*Id.* at 290a-98a, 309a-20a.)

_____

[4] The suspensions were to run consecutively for a total of 22 months and commenced immediately. (R.R. at 21a.)

[5] The MV-431 is a log book that stations use to record inspections. (Finding of Fact (FOF) ¶ 58.)

[6] Section 4724(a) provides:

> The [D]epartment shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station or may impose a monetary penalty or may issue a warning against the station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the [D]epartment. A schedule of all penalties, points and suspension may be established by the [D]epartment by publishing a notice in the Pennsylvania Bulletin until the regulations governing these penalties are promulgated by the [D]epartment. The [D]epartment shall maintain a list of all stations holding certificates of appointment and of those whose certificates of appointment have been suspended. Any suspended certificate of appointment and all unused certificates of inspection shall be returned immediately to the [D]epartment.

75 Pa.C.S. § 4724(a).

[7] These regulations set forth a schedule of penalties for various violations.

3

Thereafter, Manna filed statutory appeals to the trial court, and consolidated hearings were held. At the hearing Gregory Neely, a quality assurance officer (QAO) with Parsons Corporation, with which the Department contracts to conduct investigative and administrative audits, testified as an expert in the field of Pennsylvania vehicle safety and emissions inspections.[8] Manna also testified.

Based upon the testimony, the trial court found, in relevant part, as follows.[9] On April 1, 2021, the QAO went to the Station to investigate a consumer complaint. (Findings of Fact (FOF) ¶¶ 24, 31, 117, 141.) When the QAO arrived, Manna was not present, so the QAO spoke with an employee of the Station (Employee). (*Id.* ¶¶ 32, 34.) The Employee told the QAO that Manna was in court and probably had her phone turned off. (*Id.* ¶¶ 35, 121.) The Employee also told the QAO that on March 25, 2021, the landlord evicted Manna from the premises, but a court reversed the eviction the next day. (*Id.* ¶¶ 36-37.) The Employee further relayed to the QAO that while Manna was evicted, the Station sustained a break-in, at which time its security system, computers, and its MV-431 were stolen, all of which was reported to police. (*Id.* ¶¶ 36, 39-40.) The Employee showed the QAO where the records that had not been stolen were kept, which the QAO began reviewing. (*Id.* ¶¶ 42-43.)

The QAO found 10 work orders dated between February 25, 2021, and March 16, 2021, with nonsequential emission and safety sticker numbers written on them, which the QAO believed signaled customers returned to the Station to get their stickers at a later time. (*Id.* ¶¶ 51-52.) During the review, the QAO found work orders that stated, "Passed Safety Inspection station awaiting stickers from [the Department]/UPS," which would be against the Vehicle Code, 75 Pa.C.S. §§ 101-

---

[8] Manna objected to the QAO testifying as an expert, but based upon voir dire of the QAO, the trial court qualified the QAO as an expert. (FOF ¶¶ 4, 19.)

[9] The Department does not challenge any of the trial court's factual findings.

4

9805. (*Id.* ¶¶ 53-54, 63.) The QAO was aware of times it took 14 days or longer for the Department to send stickers to a station, but according to the QAO, if a station did not have stickers, it should not perform any inspections. (*Id.* ¶¶ 127, 129.) The QAO also stated the 10 work orders all had the same brake and tire measurement on them, which did not seem correct and was not typical. (*Id.* ¶¶ 55-56.)

The QAO testified 50 inspections were completed but not logged into an MV-431 between March 25, 2021, to April 1, 2021, and Manna did not provide proof that the MV-431 was stolen. (*Id.* ¶¶ 59-60.) The QAO further testified that this number of inspections in a such a short period for a one-bay garage with a jack instead of a lift seemed to be a lot. (*Id.* ¶¶ 61, 110.)

While in the garage bay, the QAO observed the Employee back a Hyundai out of the garage, which the QAO assumed was for the Employee to perform a road test. (*Id.* ¶¶ 44-45.) The Employee had been completing an emissions test on the same vehicle when the QAO first arrived. (*Id.* ¶ 41.) After the Employee returned a short time later without the vehicle, the QAO asked the Employee what happened to it and why she did not perform the safety inspection, which according to the QAO is to be performed after the emissions inspection. (*Id.* ¶¶ 46-48.) The Employee indicated the safety inspection was performed before the emissions inspection, and when the QAO told the Employee that was not the proper procedure, the Employee responded she was new and still learning. (*Id.* ¶¶ 49-50.)

The QAO also testified to seeing the Employee improperly complete an emissions test. (*Id.* ¶ 69.) The QAO explained that a gas cap checker is used to test the seal on a vehicle. (*Id.* ¶ 78.) According to the QAO, after a Hyundai left, there was a Honda gas cap in the gas cap checker, although the QAO did not see a Honda at the Station. (*Id.* ¶¶ 79-80.) The QAO inquired of Employee who acknowledged

5

she did not check the gas cap on the Hyundai and used the Honda gas cap in the gas cap checker, which was a violation of Department regulations. (*Id.* ¶¶ 81-84.) The QAO acknowledged that some vehicles use universal gas caps, and the QAO was unaware whether Hondas and Hyundais used the same type of gas cap. (*Id.* ¶¶ 85-86.)

The QAO further testified he also checked the emission analyzer,[10] which had not communicated with the Department since March 25, 2021, six days earlier. (*Id.* ¶¶ 88-89.) The analyzer would not communicate with the Department when the QAO tried to use it; instead, it indicated it could not access a network. (*Id.* ¶ 90.) The Employee told the QAO the landlord must have disconnected the internet. (*Id.* ¶ 91.) Because the analyzer was not connected to the internet, the QAO concluded all inspections performed in the last six days were improper. (*Id.* ¶ 93.) Because the analyzer was inoperable due to the lack of internet access, the QAO could not have the analyzer locked. (*Id.* ¶¶ 96-99.) Even without internet access, the QAO testified the analyzer could be used to conduct an emissions test. (*Id.* ¶ 100.) According to the QAO, the Department should have been notified when the internet was lost because the analyzer cannot communicate data from tested vehicles. (*Id.* ¶ 101.)

The QAO testified he requested to see the Station's emissions records, but most of them were not available; the Employee told the QAO they were stolen and the theft was reported to police. (*Id.* ¶¶ 102, 104.) The Department introduced the Station's sticker reconciliation report, which the QAO explained shows which stickers have been used and which should be at the garage. (*Id.* ¶¶ 105-06.) The QAO observed a pack of 50 stickers and another pack of 38 stickers. (*Id.* ¶ 103.) The QAO thought that an unusual amount of stickers had been ordered but not used,

---

[10] The emission analyzer was described as a machine used to run diagnostics on a vehicle and communicate all inspections with the Department every 48 hours. (FOF ¶¶ 88, 92.)

6

especially for that size station. (*Id.* ¶¶ 107, 112.) In January and February 2021, the Station ordered 50 tickets, and previously 100 to 150 stickers. (*Id.* ¶¶ 109, 111.) The QAO testified most stations work off one package of stickers and have one pack unopened ready to use. (*Id.* ¶ 108.) The QAO also testified the Station did not have certain signs that were required, including one listing the prices of various inspections and tests; it also did not have its Certificate of Appointment of Mechanic's License posted. (*Id.* ¶ 113.) The QAO did not believe three vehicles would fit in the bay area. (*Id.* ¶ 115.) Although Manna was cited for not having Garage Keepers Liability Insurance, the QAO did not testify about this or include it in his report. (*Id.* ¶ 132.)

Manna testified about the eviction and the break-in. (*Id.* ¶¶ 133-34.) Manna said employees from an adjacent business took the items and vandalized the Station, which was caught on video, after the landlord gave them a key. (*Id.* ¶¶ 135-37.) At the time of the audit, Manna said the Station was still in disarray. (*Id.* ¶¶ 148-49.) The MV-431 was stolen and a police report was filed, a copy of which was provided to the QAO's manager. (*Id.* ¶¶ 179-80.) Manna also read a copy of the report into the record, which described the items taken including the inspection book, a Comcast box, and emissions stickers. (*Id.* ¶¶ 183-84.)

Manna explained how the Station developed a system for performing inspections efficiently and properly due to the space available, and that practice was deemed acceptable during 20 prior audits. (*Id.* ¶¶ 153-56, 161.) Manna explained how the garage bay can hold three vehicles and there is space to park seven others in the backyard. (*Id.* ¶ 157.) A vehicle upon arrival is road tested before being pulled into the garage bay to prevent it from getting blocked in the bay. (*Id.* ¶¶ 158-59.) While the vehicle is getting emissions testing, another employee pulls the tires

so the inspector can check the brake pads, rotors, and tire threads. (*Id.* ¶ 160.) Manna explained how some people leave their gas caps behind. (*Id.* ¶ 164.) Manna also described how a station can perform at least 100 inspections before being locked out of the analyzer and there is no regulation requiring connection to the internet. (*Id.* ¶ 165.) Manna claimed the landlord broke her router, which disconnected the internet. (*Id.* ¶ 166.) Manna also testified that the Employee did not know how to plug the internet into the router and Wi-Fi would not work for the analyzer. (*Id.* ¶¶ 167-68.) Manna explained she always orders the same amount of stickers and the extra stickers are the result of some vehicles only needing safety inspections, not emissions inspections. (*Id.* ¶¶ 173-74.) Manna also described the Department did not always send stickers in a timely manner, so she takes all necessary steps to ensure she has stickers on hand. (*Id.* ¶ 175.) Manna testified that when a customer has to return to get reinspected because the Station did not have stickers available, that inspection is performed for free and is a hassle. (*Id.* ¶ 176.) Manna testified that all records requested by the QAO were provided by the Employee, including all work orders from February 2021. (*Id.* ¶ 178.)

Based on these findings, the trial court concluded the Department did not establish, by a preponderance of the evidence, that Manna engaged in any fraudulent or deceitful conduct as it relates to the recordkeeping. (*Id.* ¶ 194.) The trial court credited Manna's testimony that numerous documents, including the MV-431, were stolen after the Station's eviction from the premises. (*Id.* ¶¶ 195, 198.) It also found Manna credibly testified that the landlord disconnected the electricity at the Station, resulting in the Station losing internet connectivity. (*Id.* ¶ 196.) Moreover, the trial court found Manna credibly explained the process she follows to properly inspect vehicles in an efficient manner, the issue as to testing of the gas cap, and that it

8

reinspects the vehicle if the Station does not originally have a sticker to issue. (*Id.* ¶¶ 200-02.) As for the allegation that Manna did not produce Garage Keepers Liability Insurance, the trial court concluded there was no evidence produced as to this alleged violation. (*Id.* ¶ 199.) Thus, the trial court granted Manna's appeals and reinstated the Certificates.

The Department filed notices of appeal, and the trial court directed the Department to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b), Pa.R.A.P. 1925(b) (Statement). The Department filed separate Statements as to each appeal. The first two issues raised by the Department were identical in both appeals: (1) whether the trial court erred or abused its discretion in ordering the reinstatement of the certificates when such authority is vested with the Department; and (2) whether the trial court error or abused its discretion as "the weight of the evidence, by a preponderance of the evidence, supported a finding that violations had occurred and that suspension of the Certificates . . . was supported by the evidence." (R.R. at 433a, 436a.) Specific to the Emissions Certificate, the Department also argued the trial court erred or abused its discretion by finding that "engaging in fraudulent or deceitful activity" was necessary to find a violation of improper or careless recordkeeping and by addressing only the recordkeeping violation without addressing the others. (*Id.* at 433a.) Specific to the Safety Certificate, the Department asserted the trial court erred or abused its discretion by not addressing the violations related to failing to enter 50 inspections in the MV-431 book, failing to produce the MV-431 book, and inspecting vehicles while awaiting stickers from the Department. (*Id.* at 436a.)

9

In its Rule 1925(a) Opinion, after recapping the evidence presented, the trial court first stated the Department's Statements lacked specificity, such that the trial court had to "guess as to the exact issue that [the Department] is asserting." (Rule 1925(a) Op. at 25.)[11] Notwithstanding the perceived deficiency in the Department's Statements, the trial court stated it was relying on Section 4724(b) of the Vehicle Code, 75 Pa.C.S. § 4724(b), for its authority to review the suspensions. (*Id.* at 25-26.) It further explained that while caselaw prevents a common pleas court from modifying a penalty when its findings are the same as the Department's, if its findings are different than the Department, it may alter the penalty. (*Id.* at 26.) The trial court stated "[i]t is abundantly clear . . . the [t]rial [c]ourt made findings of fact and conclusions of law that are different from [the Department]." (*Id.* at 27.) The trial court further concluded that Section 4724(b) of the Vehicle Code "specifically authorizes the [t]rial [c]ourt to alter the penalty," as does the language of the notices of suspension, which expressly provide for an appeal. (*Id.*) The trial court stated:

> The ability to appeal without the right of redress is equivalent to having no right to appeal. That premise is in contradiction to [Section] 4724(b). It is incomprehensible that [the Department] would notify [] [p]etitioner[s]/[a]ppell[ants] that they have a right to appeal if the [trial c]ourt did not have the authority to alter the penalty.

(*Id.*)

The trial court likewise concluded the second issue raised in each of the Department's Statements, related to the sufficiency of the evidence, was too vague and therefore waived. (*Id.* at 28.)

As for the Department's argument regarding the recordkeeping violation, the trial court stated the notice did "not explain which of the items are considered

---

[11] A copy of the Rule 1925(a) Opinion may be found in the Reproduced Record beginning at page 439a.

10

improper record keeping or how they were improper as [they] relate[] to" the Vehicle Code or regulations. (*Id.*) The trial court also noted the QAO never referenced a specific section. (*Id.*) Moreover, the trial court found the notice simply cited Section 4724 and 67 Pa. Code § 175.51(a), which are not substantive provisions. (*Id.* at 28-29.) As such, the trial court found the Notice violated Manna's due process rights. (*Id.* at 29.) Citing precedent from our Court, the trial court stated that "[a]dequate notice for procedural due process purposes requires at a minimum that the notice contain a sufficient listing and explanation of the charges against an individual." (*Id.*) The trial court further explained that neither the statute nor regulations define "improper" or "careless," and, as such, they should be construed according to their common and approved usage. (*Id.* at 30.) Based upon the dictionary definitions of those terms, the trial court reasoned that the QAO never explained "what was incorrect, inaccurate, neglectful, or inattentive as to these records," or what statutory or regulatory provision was allegedly violated. (*Id.*) To the extent the charge related to the MV-431, the trial court found Manna credibly testified it was stolen and reported to police as such. (*Id.*) Because the QAO did not "articulate what was improper or careless in the record keeping . . . the [t]rial [c]ourt [would not] speculate as to what code section or statute Manna had violated." (*Id.* at 31.)

## II.    PARTIES' ARGUMENTS

On appeal, the Department argues there is substantial evidence, in the form of the QAO's testimony, to support a finding that Manna violated the Vehicle Code and Department's regulations. It argues Employee admitted to the QAO that she performed the safety inspection before the emissions inspection, which is contrary

11

to the regulation found at 67 Pa. Code § 175.42(d)(4).[12]  It also asserts the QAO observed the same employee using a Honda gas cap test on a Hyundai, which violates emissions inspection standards.  Further, in terms of the Safety Certificate suspension, the Department points to testimony that the Station was passing vehicles that were inspected but not affixing stickers to them, which violates 67 Pa. Code § 175.41(d),[13] and approximately 50 inspections were completed between March 25,

_____

[12] This provision provides:

(4) *Prohibitions against replacing a certificate of inspection*.  Inspection stations may not replace a certificate of inspection to which a temporary inspection approval indicator has been affixed if one or more of the following apply:

(i) The inspection station did not perform the original inspection of the vehicle or issue the temporary inspection approval indicator affixed to the current certificate of inspection.

(ii) The vehicle does not display a renewed emission certificate of inspection.

(iii) The original safety certificate of inspection has expired.

(iv) The vehicle is in an obviously unsafe condition, including, but not limited to, bald tires, exhaust leaks, broken glazing and broken or missing lighting.

67 Pa. Code § 175.42(d)(4).

[13] This provision provides, in pertinent part:

*Affixing certificate of inspection or temporary inspection approval indicator*.  The certificate of inspection or temporary inspection approval indicator shall only be affixed to the vehicle immediately upon the successful completion of the inspection, on the premises of the official inspection station and on a portion of the premises located within 100 feet and on the same side of the street as the official inspection station.  A certificate of inspection or temporary approval indicator may not be issued or affixed at another area or location.

67 Pa. Code § 175.41(d).

2021, and April 1, 2021, but not logged into the MV-431, as required by 67 Pa. Code § 175.42.[14]  In addition the Department argues that when the QAO asked to see certain records, they were not available, which violates the regulations at 67 Pa. Code §§ 177.421(a)(5),[15] 175.42(c).  Thus, in the Department's view, the trial court erred in sustaining Manna's appeals on the basis the Department did not meet its burden.  It asks the Court to reverse the trial court's Orders and reinstate the Certificates' suspensions.

---

[14] Presumably, the Department is referring to Section 175.42(c), which provides:

(c) *Records retention*.

> (1) The original official inspection report sheet (Form MV-431 or MV-480) shall be retained as a garage record and kept on file at the station for audit. At the close of each inspection period, the official inspection report sheet shall be placed in the station's files, even though all spaces may not have been used, and a new inspection report sheet shall be started for the new inspection period.

> (2) A work order signed by the inspecting mechanic as required under this section shall be available for inspection upon request by the inspection station supervisor or an authorized representative of the Department.

67 Pa. Code § 175.42(c).

[15] Section 177.421(a)(5) provides:

(a) *Personal liability*.  It is the responsibility of the owner of an emission inspection station to:

. . . .

> (5) Keep, at the station, as applicable, for 2 years, duplicate copies of completed Certificate of Emission Requisition Forms, repair order forms related to waivers and the original Certificate of Waiver Forms, and other required forms.

67 Pa. Code § 177.421(a)(5).

Manna, proceeding pro se, argues that the Department's authority to suspend certificates is not limitless. Manna argues the notices that were issued violate her due process rights as they did not specify what regulations she allegedly violated and the Department did not provide Manna a hearing prior to immediate suspension, which itself is contradictory to the Department's regulations, namely 67 Pa. Code § 177.651.[16] She also asserts the notices were deficient as they did not allege which records were not properly kept or how they were improper. Manna further argues the QAO did not identify specific sections of the Vehicle Code or regulations during his testimony. Manna argues the notices only referenced Section 4724 of the Vehicle Code, 75 Pa.C.S. § 4724, and 67 Pa. Code § 175.51(a), which merely provides the Department with authority to suspend certificates and lists penalties, respectively. Manna also claims the notices were insufficient as they include phrases, such as "including but not limited to," which is too broad and vague to put Manna on notice as to what she was defending. Further, Manna argues that since "improper" and "careless" are not defined by statute or regulation, they should be given their common meaning. Lastly, with regard to the MV-431 book, Manna argues she did present evidence that it was reported to the police as stolen, which the trial court credited. Because the Department did not meet its burden of proof, Manna argues the trial court's Orders should be affirmed.

---

[16] This regulation provides:

> Prior to the immediate suspension of any official emission inspection station, certificate of appointment, emission inspector certification or certified repair technician, the Department shall, within 3 days, provide written notice of the alleged violation and the opportunity to be heard.

67 Pa. Code § 177.651.

14

## III. DISCUSSION

When reviewing an inspection certificate suspension, our review "is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence." *McCarthy v. Dep't of Transp.*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010). We have defined "substantial evidence" as "relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." *Snyder v. Dep't of Transp., Bureau of Motor Vehicles*, 970 A.2d 523, 528 (Pa. Cmwlth. 2009) (citation omitted). Moreover, if the record evidence "is adequate to support the finding found by the trial court, as fact finder, we are precluded from overturning th[e] finding and must affirm." *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). In addition, we must review the record "evidence in a light most favorable to . . . the prevailing party in the trial court." *Sillah v. Dep't of Transp.* (Pa. Cmwlth., No. 1311 C.D. 2016, filed Jan. 16, 2018), slip op. at 10 n.15[17] (citing *McDonald v. Dep't of Transp., Bureau of Driver Licensing*, 708 A.2d 154, 156 (Pa. Cmwlth. 1998)). Issues of witness credibility and evidentiary weight are within the trial court's province. *Id.*; *Castagna v. Dep't of Transp., Bureau of Motor Vehicles*, 831 A.2d 156, 160 n.4 (Pa. Cmwlth. 2003). The Department bears the burden, by the preponderance of the evidence, to prove a violation of the Vehicle Code or Department regulations. *Firestone Tire & Serv. Ctr., O.I.S. #798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005).

---

[17] This unreported panel decision is cited for its persuasive, rather than binding, value pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

15

The Department argues it presented evidence that establishes violations of various regulations. However, it is unnecessary to reach this issue because, as it did in a prior case involving Manna and the Station, *Manna v. Department of Transportation, Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 516-17 C.D. 2022, filed September 20, 2024), slip op. at 10-12 (*Manna I*), the Department's notices were deficient in that they did not identify the specific statutory and/or regulatory provision allegedly violated, such as to satisfy due process requirements. The only section of the Vehicle Code and the regulations cited in the notices are not substantive provisions; rather, Section 4724 of the Vehicle Code simply provides the Department with the authority to supervise and inspect stations, and both regulatory provisions merely list penalties. As such the trial court found they violated due process:

> Adequate notice for procedural due process requires at a minimum that the notice contain a sufficient listing and explanation of the charges against an individual. *Dunn v.* [*Dep't of Transp.*], *Bureau of Driver* [*L*]*icensing*[,] 819 A.2[d] 189 (Pa. Cmwlth. 2003), citing *Gombach v. Dep*[*'t*] *of State, Bureau of Comm*[*'ns*]*, Elections & Legis*[.], 692 A.2d 1129 (Pa. Cmwlth. 1997). At the very least, the notice must have a "sufficient **listing and explanation** of the charges against an individual." [] *Id.* Pursuant to the holding in *Walker v. Department of Transportation*[*, Bureau of Motor Vehicles* (Pa. Cmwlth., No. 771 C.D. 2018, filed April 30, 2019),] sufficient notice requires including the date, time, and location of the conduct, **the specific section and subsection of the regulation violated**, and a summary of facts sufficient to inform the licensee of the nature of the conduct forming the basis for the violation.

(Rule 1925(a) Op. at 29-30) (emphasis in original).[18] Given our precedent cited by the trial court both in its Rule 1925(a) Opinion in these matters, and as discussed

---

[18] The trial court's due process analysis appears in its Rule 1925(a) Opinion in the section related to the Emissions Certificate. (Rule 1925(a) Op. at 28-30.) However, its reasoning is **(Footnote continued on next page…)**

16

more fully in *Manna I*, we agree the notices are deficient and violative of Manna's due process rights. Although the Department tries to remedy its deficiencies by providing more specific citations to other regulations in its brief to this Court, providing such information after the fact defeats the purpose of due process.[19]

## IV. CONCLUSION

Based upon the foregoing, we affirm the trial court's Orders.

_____
**RENÉE COHN JUBELIRER,** President Judge

---

equally applicable to the notice involving the suspension of the Safety Certificate, which suffered from the same deficiencies. "[T]his Court may affirm on grounds different than those relied upon by the court or agency below if such grounds for affirmance exist." *Motor Coils MFG/WABTEC v. Workers' Comp. Appeal Bd. (Bish)*, 853 A.2d 1082, 1087 n.9 (Pa. Cmwlth. 2004).

[19] We note that even if we were to reach the merits of the Department's arguments, based upon the trial court's credibility determinations, we would still affirm.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Kedecia Manna d/b/a 9th and Lloyd Inspections | : CASES CONSOLIDATED |
| | : |
| | : |
| v. | : Nos. 1057 C.D. 2022 |
| | : 1058 C.D. 2022 |
| Commonwealth of Pennsylvania, | : |
| Department of Transportation, | : |
| Bureau of Motor Vehicles, | : |
| Appellant | : |

## **O R D E R**

**NOW**, November 14, 2024, the Orders of the Court of Common Pleas of Delaware County, entered in the above-captioned matters, are **AFFIRMED**. The Motion for Leave to File Praecipe to Withdraw Appeal, which was opposed, is **DENIED**.

_____
**RENÉE COHN JUBELIRER,** President Judge